## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **HARBINGER CAPITAL PARTNERS**<br>**MASTER FUND I, LTD.,** | ) )<br>)<br>) | |
| **Plaintiff,** | )<br>) | **Civil Action No. 06-_____** |
| **v.** | )<br>) | |
| **DHB INDUSTRIES, INC.,** | )<br>) | |
| **Defendant.** | )<br>) | |

## VERIFIED COMPLAINT

Plaintiff Harbinger Capital Partners Master Fund I, Ltd. ("Harbinger"), by and through its undersigned attorneys, for its verified complaint against defendant DHB Industries, Inc. ("DHB" or the "Company"), alleges as follows:

### INTRODUCTION

1.    Harbinger brings this action to redress DHB's violations of Section 14(c) of the Securities Exchange Act of 1934 ("Exchange Act") and rules promulgated thereunder, and its attempt to unlawfully strip stockholders of their fundamental right to an informed exercise of the stockholder franchise. Harbinger also brings this action seeking relief under 8 *Del. C.* §§ 211 and 213.

2.    On May 6, 2005, the Company held its last annual meeting of stockholders. Since then, the Company disclosed extensive product quality problems that resulted in a $60 million charge against earnings, wiping out nearly half of the stockholders' equity.

3.    In addition, in the fall of 2005, numerous class action and derivative lawsuits were filed against the Company and its officers and directors alleging, *inter alia*, fraud and

insider trading alleging damages of over $200 million. Three of the Company's current directors -- Gary Nadleman, Cary Chasin and Barry Berkman -- are defendants in those lawsuits. Upon information and belief, the Board, of which these three directors constituted a majority, voted to approve a preliminary settlement of the class and derivative actions in July 2006 that would include a Company contribution of $23 million.

4.      In March 2006, the Company also undertook to re-examine prior financial statements. As of today, on information and belief, DHB has neither completed its audit of fiscal year 2005 nor released any numbers for 2006, having defaulted for three consecutive quarters. As a result, the Company is prohibited from distributing a proxy statement or soliciting proxies for an annual meeting.

5.      DHB set an annual meeting for December 5, 2006, on information and belief, in order to avoid this disability. The notice for this meeting, which was mailed out the day before Thanksgiving, provides virtually no information, excluding even the names of the directors nominated for election. The Company has also failed to distribute either an information statement or an annual report as required by Section 14(c) of the Exchange Act and the rules promulgated thereunder, depriving stockholders of any ability to cast an informed vote. Indeed, Congress's entire purpose for enacting this provision was to prevent registrants -- such as DHB -- from avoiding their disclosure obligations by the simple expedient of declining to solicit proxies in connection with any meeting of stockholders.

6.      DHB's actions disregard stockholder democracy, and demonstrate an effort to insulate the directors from any vote by the stockholders as well as prevent the stockholders from acting on other business with respect to the Company. The Company should not be permitted to

2

trample such fundamental stockholder rights, and accordingly, the annual meeting should be enjoined.

## PARTIES

7.     Plaintiff Harbinger is organized under the laws of the Cayman Islands, with its principal place of business in New York, New York.  Harbinger, as the beneficial owner of approximately 9.9% of DHB's common stock, is, according to publicly available records, the Company's second largest stockholder.

8.     Defendant DHB is a Delaware corporation with its principal place of business in Pompano Beach, Florida.  Through its two operating subsidiaries, DHB Armor Group and DHB Sports Group, the Company develops, manufactures and distributes bullet and projectile-resistant garments and related ballistic accessories and technologies for the United States military and law enforcement agencies.

## JURISDICTION AND VENUE

9.     Plaintiff's first claim arises under Section 14(c) of the Securities Exchange Act of 1934.  Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

10.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental subject matter jurisdiction over Plaintiff's second and third claims for relief under 8 *Del. C.* §§ 211 and 213.

11.     Venue is proper in this district pursuant to 15 U.S.C. §§ 78aa because the Company is incorporated in the State of Delaware.

## FACTS COMMON TO ALL COUNTS

12.     DHB was founded in 1992 by David H. Brooks, who until July 2006 remained the Company's chief executive officer and chairman of its board of directors.  Brooks and his family remain the largest stockholders of the Company.

RLF1-3087589-1

13.    On May 6, 2005, DHB held its last annual meeting of stockholders. Prior to this meeting, the Company had reported increased sales of bullet proof vests to domestic law enforcement agencies, large supply contracts with the U.S. military and record sales and profits.

14.    Only four months following the 2005 annual meeting, however, on August 30, 2005, DHB publicly announced extensive product quality problems that required the Company to implement a bullet proof vest replacement program. As a result, the Company was forced to take a $60 million charge against earnings. This charge completely eliminated the Company's previously reported income for the year, and destroyed stockholder equity by 50%. The stock price fell from a high of $22.70 on December 27, 2004 to $4.50 on August 30, 2005.

15.    Shortly after this announcement, in the fall of 2005, fifteen class action suits and four derivative actions were filed against the Company and certain of its officers and directors, including Brooks, Sandra Hatfield (DHB's then chief operating officer), Dawn Schlegel (DHB's then chief financial officer), and directors Barry Berkman, Cary Chasin, Jerome Krantz and Gary Nadelman.   On March 20, 2006, a consolidated class action complaint and consolidated derivative action complaint were filed in the United States District Court for the Eastern District of New York.

16.    The consolidated class action complaint describes a classic "pump and dump scheme" by DHB officers and directors, who are alleged to have released false financial statements and concealed product quality problems during the class period, and then sold most or all of their holdings at the peak of the stock price in November and December 2004, receiving over $200 million in insider trading profits. On August 16, 2006, Hatfield and Schlegel were indicted and charged with similar allegations. The Company has disclosed that Brooks is also under a criminal investigation.

4

17.    According to the consolidated class action complaint, in 2003, the Securities and Exchange Commission ("SEC") began its investigation into undisclosed self-dealing transactions at DHB, which funneled tens of millions of dollars to entities controlled by the Brooks family. Upon information and belief, this investigation is currently ongoing.

18.    The consolidated derivative complaint brought on behalf of the Company alleges breaches of fiduciary duty against the officers, directors and related third parties and focuses on self-dealing transactions between DHB and Brooks (and his family and family-controlled entities), as well as disclosure of false information followed by insider stock sales that are the subject of the consolidated class action.

19.    On July 10, 2006, Brooks was forced out as the Company's CEO and was placed on indefinite administrative leave in light of the pending federal and state criminal investigations.

20.    The Company's Form 8-K filed with the SEC on July 13, 2006 discloses that the Company has signed a Memorandum of Understanding ("Memorandum") to settle the consolidated class action and derivative suits. The Memorandum provides that the class action will be settled for $34.9 million in cash, plus 3,184,713 shares of the Company's common stock. Three of the members of the Board at the time the Company entered into the Memorandum are defendants in the class action and derivative suits and would receive full releases under the terms of the proposed settlement. Moreover, other than the sums due from the D&O insurance carrier, the Company is effectively funding $23 million of the settlement through issuance of the additional shares of the Company's common stock to Brooks, which increases his and his family's ownership of DHB to over 28% according to Brooks' 13D/A filed with the SEC on September 12, 2006.

5

21.    Especially in view of these significant events since the Company's last annual meeting, it is critical that Plaintiff and other stockholders receive full disclosure of material information as required by Section 14(c) and the opportunity to evaluate whether to seek to replace the incumbent board at the next annual meeting. As set forth below, however, DHB has stripped stockholders of these fundamental rights.

22.    Late in the day on Monday, November 27, 2006, the Company filed with the SEC a Form 8-K, disclosing, for the first time publicly, the fact that it intended to hold an annual meeting of stockholders at which directors would be elected a mere eight days later on Tuesday, December 5, 2006. The entire disclosure made to its stockholders in the 8-K about an event of such importance was as follows:

> The Board of Directors of DHB Industries, Inc. ("DHB" or the "Company") called the 2006 Annual Meeting of Stockholders for December 5, 2006 for the purpose of electing directors to hold office during the year following the annual meeting and until their successors are elected and qualified. The close of business on November 21, 2006 has been fixed as the date for determining the stockholders who are entitled to notice of and to vote at the annual meeting.

> The Company has not yet completed the audit of its fiscal year 2005 and is in the process of re-auditing prior periods. Therefore, the Company is not permitted to distribute a proxy statement or to solicit proxies for the annual meeting. Accordingly, a stockholder wishing to vote must either vote in person at the meeting or make arrangements to grant a proxy to another person who will attend the meeting and vote. If a stockholder's shares are held in "street name" at a brokerage firm, such stockholder will need to request an "assignment of proxy," "legal proxy" or other appropriate delegation of authority to vote from the broker and present that assignment of proxy or legal proxy at the meeting.

23.    Despite the fact that this was the first Company notice almost any stockholder reading the Form 8-K could have received about the meeting, there is no mention of even the city in which the meeting will be held -- let alone the address or time.

6

24.    Plaintiff has just received from its broker the notice of the meeting that is required by Delaware law.  Upon information and belief, the notices were sent via United States First Class Mail late in the day on Wednesday, November 22, 2006--the night before Thanksgiving and the following holiday weekend.  The first notice that the vast majority of stockholders who are not management or directors would receive would be when the Form 8-K was filed five days later.

25.    The Form 8-K states that the date for the purpose of establishing the stockholders entitled to notice of and vote at the meeting is November 21, 2006.  However, the cover of the Form 8-K claims that the "date of earliest event reported" is November 22, 2006.  It is not at all clear from the notice when the Board met to set that record date or whether the Board violated Delaware law by setting a retroactive record date.

26.    Any Company stockholder who wants to try to exercise his or her right to vote at the meeting has three choices (once able to find out the city, address and time of the meeting):

(1)    Incur the time and expense involved in personally traveling to the meeting location;

(2)    Identify someone else who is going to travel in person to the meeting, figure out on his or her own how to draft and execute a proxy and send it along with the other person; or

(3)    If the stockholder holds in street name (by far the most common method by which the Company's stockholders hold their stock), (a) decipher the cryptic instructions to "request an 'assignment of proxy,' 'legal proxy' or other appropriate delegation of authority to vote from the broker," (b) reach someone at the brokerage house to make such a request, (c) receive back the necessary

paperwork and even then, (d) incur the time and expense involved in personally traveling to the meeting location—all of which steps would have to be accomplished in a matter of several days.

27.     The two paragraph text of the Form 8-K remains the only communication the Company has filed with the SEC about the upcoming meeting, in clear disregard of the duty under federal law to send an information statement and annual report to stockholders if there will be an annual meeting of stockholders at which directors will be elected.

28.     It would be impossible for any stockholder to nominate a slate of directors. First, no stockholder knows how many directors are up for election because the current Board recently expanded the Board and has appointed three new directors.    Second, they would have to assemble a slate of qualified individuals willing to serve as directors and file with the SEC, get cleared, and mail proxy materials to all stockholders.  Thus, by timing the disclosure of and holding of the meeting as described above, the Company's directors precluded any stockholder from proposing an alternate slate or soliciting proxies in opposition to whatever slate the incumbent directors mount.    Management and its hand-picked directors will control the Company for another year without effectively being elected by the Company's stockholders.

**COUNT I**
**(VIOLATION OF SECTION 14(C) OF THE SECURITIES EXCHANGE ACT OF 1934
AND RULES 14C-2 AND 14C-3 PROMULGATED THEREUNDER)**

29.     Harbinger repeats and realleges paragraphs 1 through 28 as if fully set forth herein.

30.     Section 14(c) of the Exchange Act and Rule 14c-2 promulgated thereunder require that a company must distribute written information statements to its stockholders at least 20 days before an annual meeting of stockholders in the absence of a proxy solicitation.  These

8

information statements must contain substantially the same information required to be provided in a proxy statement pursuant to Section 14(a).

31.    Section 14(c) of the Exchange Act and Rule 14c-3 promulgated thereunder require that a company must distribute annual reports before an annual meeting of stockholders in the absence of a proxy solicitation.

32.    The Company's notice to stockholders and Forms 8-K with respect thereto do not constitute information statements or annual reports within the meaning of Section 14(c) of the Exchange Act and Rules 14c-2 and 14c-3.

33.    The Company mailed its notice to stockholders no more than 12 days before the annual meeting noticed for December 5, 2006, and made its federal filings with respect thereto only eight days before the meeting.

34.    Harbinger seeks a judgment from this Court declaring that the Company has violated Section 14(c) of the Exchange Act and Rules 14c-2 and 14c-3.

35.    Harbinger seeks an order from this Court enjoining the Company's annual meeting set for December 5, 2006 due to this violation of federal securities law.

36.    Harbinger has no adequate remedy at law.

### COUNT II
### (DECLARATORY RELIEF UNDER 8 DEL. C. § 211)

37.    Harbinger repeats and realleges the allegations contained in Paragraphs 1 through 36.

38.    Delaware law provides a remedy when a corporation organized under the laws of that state does not hold an annual meeting within thirteen months of its last annual meeting.

9

39.    DHB has failed to hold an annual stockholders meeting, or otherwise been the subject of action by written consent to elect directors in lieu of a meeting, for more than thirteen months.

40.    Harbinger is therefore entitled to a summary order of this Court compelling the holding of a meeting of stockholders of the Company, upon adequate notice, to elect directors and address Company business following issuance of the order.  Harbinger requests that the Court order such a meeting within 60-90 days to allow Plaintiff and other stockholders an adequate opportunity to evaluate whether to seek to replace the incumbent board at the next annual meeting.

41.    Harbinger has no adequate remedy at law.

### COUNT III
### (DECLARATORY RELIEF FOR VIOLATION OF 8 DEL. C. § 213)

42.    Harbinger repeats and realleges the allegations contained in Paragraphs 1 through 41.

43.    Delaware law requires that in order to determine stockholders entitled to notice of or to vote at a meeting, the board fix a record date, which date must be no more than sixty and no less than ten days before the date of the meeting.

44.    Pursuant to 8 *Del. C.* § 213, the record date selected by the board cannot precede the date on which the resolution fixing the record date is adopted by the board.

45.    The 8-K filed with the SEC on November 27, 2006 states that the date of earliest event reported is November 22, 2006.

46.    The board has set the record date for the annual meeting scheduled for December 5, 2006 as November 21, 2006.

47.     If the Board acted on November 22, 2006 to set a record date of November 21, 2006, the record date is invalid, and Harbinger requests an order declaring that the record date set by the Company is invalid.

48.     Harbinger has no adequate remedy at law.

WHEREFORE, Harbinger respectfully prays for judgment:

(a)     Declaring that the Company has violated Section 14(c) of the Exchange Act and Rules 14c-2 and 14c-3;

(b)     Temporarily, preliminarily and permanently enjoining the Company from further violations of the Exchange Act;

(c)     Enjoining the Company's annual meeting set for December 5, 2006 until such time as DHB complies with all federal securities laws;

(d)     Ordering the holding of an annual meeting of stockholders within 60-90 days and permitting stockholders who wish to do so, to nominate directors and propose other appropriate matters for stockholder action at that meeting;

(e)     If the Board set a retroactive date, declaring that the record date for the annual meeting set by the Company is invalid; and

(f)     Awarding Harbinger's attorneys' fees and such other and further relief as may appear just and proper, together with the costs and disbursements of this action.

11

*Anne C. Foster*

OF COUNSEL:

Stephen D. Alexander
Susan C. Chun
Bingham McCutchen LLP
355 So. Grand Avenue, Suite 4400
Los Angeles, California 90071
(213) 680-6400

P. Sabin Willett
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8775

Dated: November 30, 2006

Anne C. Foster (#2513)
Foster@rlf.com
Michael R. Robinson (#4452)
Robinson@rlf.com
Daniel M. Silver (#4758)
Silver@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
    Attorneys for Plaintiff Harbinger Capital
    Partners Master Fund I, Ltd.

**VERIFICATION**

STATE OF New York )
                      ) ss
COUNTY OF New York )

       I, Philip A. Falcone, am the Senior Managing Director of Harbinger Capital Partners Offshore Manager, L.L.C., the investment manager of Harbinger Capital Partners Master Fund I, Ltd. I am authorized to execute this verification for Harbinger Capital Partners Offshore Manager, L.L.C. and on behalf of Harbinger Capital Partners Master Fund I, Ltd. I have reviewed the allegations of the foregoing Verified Complaint For Declaratory And Injunctive Relief and know such allegations to be true of my own knowledge, except as to matters alleged upon information and belief. As to those matters, I believe them to be true.

HARBINGER CAPITAL PARTNERS MASTER FUND I, LTD.
By: Harbinger Capital Partners Offshore Manager, L.L.C., as investment manager
By: _____
Name: Philip A. Falcone
Title: Senior Managing Director

Sworn to and subscribed before me this 30th day of November, 2006.

_____
Notary Public

COURTNEY MURPHY
Notary Public - State of New York
NO. 01MU6138490
Qualified in New York County
My Commission Expires Dec 19, 2009

JS 44 (Rev 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Harbinger Capital Partners Master Fund I, Ltd.

## DEFENDANTS
DHB Industries, Inc.

**(b)** County of Residence of First Listed Plaintiff  Cincinnati, OH
(EXCEPT IN U S PLAINTIFF CASES)

County of Residence of First Listed Defendant_____
(IN U S PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Anne C. Foster, Esq.
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700

Attorneys (If Known)

## II.  BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
    Plaintiff

☒ 3  Federal Question
    (U S Government Not a Party)

☐ 2  U S Government
    Defendant

☐ 4  Diversity
    (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                        and One Box for Defendant

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110  Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610  Agriculture | ☐ 422  Appeal 28 USC 158 | ☐ 400  State Reapportionment |
| ☐ 120  Marine | ☐ 310  Airplane | ☐ 362  Personal Injury - Med Malpractice | ☐ 620  Other Food & Drug | | ☐ 410  Antitrust |
| ☐ 130  Miller Act | ☐ 315  Airplane Product Liability | ☐ 365  Personal Injury - Product Liability | ☐ 625  Drug Related Seizure of Property 21 USC 881 | ☐ 423  Withdrawal 28 USC 157 | ☐ 430  Banks and Banking |
| ☐ 140  Negotiable Instrument | ☐ 320  Assault. Libel & Slander | ☐ 368  Asbestos Personal Injury Product Liability | ☐ 630  Liquor Laws | | ☐ 450  Commerce |
| ☐ 150  Recovery of Overpayment & Enforcement of Judgment | ☐ 330  Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640  R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460  Deportation |
| ☐ 151  Medicare Act | ☐ 340  Marine | ☐ 370  Other Fraud | ☐ 650  Airline Regs | ☐ 820 Copyrights | ☐ 470  Racketeer Influenced and Corrupt Organizations |
| ☐ 152  Recovery of Defaulted Student Loans (excl Veterans) | ☐ 345  Marine Product Liability | ☐ 371  Truth In Lending | ☐ 660  Occupational Safety/Health | ☐ 830  Patent | ☐ 480  Consumer Credit |
| ☐ 153  Recovery of Overpayment of Veteran's Benefits | ☐ 350  Motor Vehicle | ☐ 380  Other Personal Property Damage | ☐ 690  Other | ☐ 840  Trademark | ☐ 490  Cable/Sat TV |
| ☐ 160  Stockholder's Suits | ☐ 355  Motor Vehicle Product Liability | ☐ 385  Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810  Selective Service |
| ☐ 190  Other Contract | ☐ 360  Other Personal Injury | | ☐ 710  Fair Labor Standards Act | ☐ 861  HIA (1395ff) | ☒ 850  Securities/Commodities/ Exchange |
| ☐ 195  Contract Product Liability | | | ☐ 720  Labor/Mgmt. Relations | ☐ 862  Black Lung (923) | ☐ 875  Customer Challenge 12 USC 3410 |
| ☐ 196  Franchise | | **PRISONER PETITIONS** | ☐ 730  Labor/Mgmt. Reporting & Disclosure Act | ☐ 863  DIWC/DIWW (405(g)) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 510  Motions to Vacate Sentence | ☐ 740  Railway Labor Act | ☐ 864  SSID Title XVI | ☐ 890  Other Statutory Actions |
| ☐ 210  Land Condemnation | ☐ 441  Voting | Habeas Corpus: | ☐ 790  Other Labor Litigation | ☐ 865  RSI (405(g)) | ☐ 891  Agricultural Acts |
| ☐ 220  Foreclosure | ☐ 442  Employment | ☐ 530  General | ☐ 791  Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 892  Economic Stabilization Act |
| ☐ 230  Rent Lease & Eject | ☐ 443  Housing/ Accommodations | ☐ 535  Death Penalty | | ☐ 870  Taxes (U S Plaintiff or Defendant) | ☐ 893  Environmental Matters |
| ☐ 240  Torts to Land | ☐ 444  Welfare | ☐ 540  Mandamus & Other | | ☐ 871  IRS - Third Party 26 USC 7609 | ☐ 894  Energy Allocation Act |
| ☐ 245  Tort Product Liability | ☐ 445  Amer. w/Disabilities - Employment | ☐ 550  Civil Rights | | | ☐ 895  Freedom of Information Act |
| ☐ 290  All Other Real Property | ☐ 446  Amer. w/Disabilities - Other | ☐ 555  Prison Condition | | | ☐ 900  Appeal of Fee Determination Under Equal Access to Justice |
| | ☐ 440  Other Civil Rights | | | | ☐ 950  Constitutionality of State Statutes |

## V. ORIGIN                 (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Justice

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statues unless diversity): 15 U.S.C. 78n

Brief description of cause:  Action for declaratory judgment and injunction against annual meeting

## VII. REQUESTED IN COMPLAINT
☐ CHECK IF THIS IS A CLASS ACTION UNDER F R C P 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  November 30, 2006

SIGNATURE OF ATTORNEY OF RECORD
*Anne C. Foster*

FOR OFFICE USE ONLY
RECEIPT #_____  AMOUNT _____  APPLYING IFP_____  JUDGE _____  MAG JUDGE _____

INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44
Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. (a) Plaintiffs - Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved)

(c) Attorneys. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)"

II. Jurisdiction. The basis of jurisdiction is set forth under Rule 8 (a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an X in this box

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party

IV. Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause

V. Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive

VI. Origin. Place an "X" in one of the seven boxes

Original Proceedings. (1) Cases which originate in the United States district courts

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision

VII. Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.C.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded

VIII. Related Cases. This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases

Date and Attorney Signature. Date and sign the civil cover sheet.
(rev 07/89)

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ COPIES OF AO FORM 85.

NCV 3 0 2006
_____
(Date forms issued)

_____
(Signature of Party or their Representative)

Scott Rosenfield
_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action