# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

HARBINGER CAPITAL PARTNERS )
MASTER FUND I, LTD., )
)
      Plaintiff, )
)
vs. )
)
DHB INDUSTRIES, INC., )
)
      Defendant. )

Civil Action No. 06-_____ 0 6 - - - 7 1 9

2006 NOV 30 PH 4: 11

## OPENING BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR A TEMPORARY RESTRAINING ORDER

OF COUNSEL:

Stephen D. Alexander
Susan C. Chun
Bingham McCutchen LLP
355 So. Grand Avenue
Suite 4400
Los Angeles, California 90071
(213) 680-6400

P. Sabin Willett
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8775

Dated: November 30, 2006

Anne C. Foster (#2513)
Foster@rlf.com
Michael R. Robinson (#4452)
Robinson@rlf.com
Daniel M. Silver (#4758)
Silver@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
   Attorneys for Plaintiff Harbinger Capital
   Partners Master Fund I, Ltd.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .............................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ................................................................... 1

SUMMARY OF ARGUMENT .......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 1

I.      FACTUAL BACKGROUND AND PROCEDURAL POSTURE .................. 1

        A.      The Parties. ........................................................................................... 1

        B.      The Company Calls its Annual Meeting ............................................... 2

ARGUMENT ...................................................................................................................... 5

I.      The Applicable Legal Standard. ...................................................................... 5

II.     Harbinger Is Entitled to a TRO On the Section 14(c) Claim. .......................... 6

        A.      Harbinger Is Likely to Prevail On the Merits of the Section
                14(c) Claim. ......................................................................................... 6

        B.      Harbinger (as well as the other stockholders) Will Suffer
                Irreparable Injury if the Court Does Not Issue the Temporary
                Restraining Order on its 14(c) Claim. .................................................. 9

        C.      The Balancing of Hardships Weighs in Harbinger's Favor ................. 10

        D.      The Public Interest Favors Entry of the Temporary Restraining
                Order. ................................................................................................... 12

CONCLUSION ................................................................................................................. 12

## TABLE OF AUTHORITIES

### CASES

*American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,*
  42 F.3d 1421 (3d Cir. 1994)...................................................................................12

*Citizens First Bancorp., Inc. v. Harreld,*
  559 F. Supp. 867 (W.D. Ky 1982).......................................................................9, 10

*Constructors Ass'n of Western Pa. v. Kreps,*
  573 F.2d 811 (3d Cir. 1978)................................................................................6, 10

*In re Digital Island Sec. Litig.,*
  357 F.3d 322 (3d Cir. 2004)....................................................................................2

*Elliott v. Kiesewetter,*
  98 F.3d 47 (3d Cir. 1996)......................................................................................11

*International Controls Corp. v. Vesco,*
  490 F.2d 1334 (2d Cir. 1974)................................................................................11

*J.I. Case Co. v. Borak,*
  377 U.S. 426 (1964).........................................................................................7, 10

*Kos Pharm., Inc. v. Andrx Corp.,*
  369 F.3d 700 (3d Cir. 2004)..................................................................................12

*Krauth v. Executive Telecard, Ltd.,*
  890 F. Supp. 269 (S.D.N.Y. 1995) ..........................................................................9

*Lichtenberg v. Besicorp Group, Inc.,*
  43 F. Supp. 2d 376 (S.D.N.Y. 1999)........................................................................9

*McIlquham v. Feste,*
  2000 WL 244859 (Del. Ch. Feb. 13, 2006) ..............................................................9

*New Castle Partners, L.P. v. Vesta Ins. Group, Inc.,*
  887 A.2d 975 (Del. Ch.), *aff'd,* 906 A.2d 807 (Del. 2005) (TABLE).......................6

*ODS Tech., L.P. v. Marshall,*
  832 A.2d 1254 (Del. Ch. 2003)................................................................................9

*Temple Univ. v. White,*
  941 F.2d 201 (3d Cir. 1991)..................................................................................11

*Tootsie Roll Indus., Inc. v. Sathers, Inc.*,
666 F. Supp. 655 (D. Del. 1987)............................................................................5, 6

## STATUTES

Fed. R. Civ. P. 65 ...................................................................................................................11

15 U.S.C. § 78n(c) ...................................................................................................................7

17 C.F.R. § 240.14c-2...............................................................................................................8

17 C.F.R. § 240.14c-3...............................................................................................................8

## NATURE AND STAGE OF PROCEEDINGS

This is a motion seeking temporary injunctive relief. DHB Industries, Inc. has noticed its annual meeting of stockholders in violation of federal securities laws. Thus, Harbinger seeks a temporary restraining order to enjoin the Company from holding its annual meeting pending the outcome of Harbinger's forthcoming application for a preliminary injunction.

## SUMMARY OF ARGUMENT

Harbinger's request for a temporary restraining order enjoining the Company from holding its annual meeting on December 5, 2006 should be granted because Harbinger has shown that: (1) there is a reasonable likelihood that it will succeed on the merits; (2) it will suffer irreparable harm absent the relief sought; (3) the balance of hardships weighs in its favor; and (4) the requested relief would be in the best public interest.

## STATEMENT OF FACTS

### I.   FACTUAL BACKGROUND AND PROCEDURAL POSTURE

#### A.   The Parties.

Harbinger Capital Partners Master Fund I, Ltd. ("Harbinger" or "Plaintiff"), is organized under the laws of the Cayman Islands, with its principal place of business in New York, New York. (Compl. ¶ 7.)[1]   Harbinger is the beneficial owner of

---

[1]   All citations to the Verified Complaint filed contemporaneously herewith are as "Compl. ¶ __."

1

approximately 9.9% of the Company's common stock, according to publicly available records. (*Id.*)

Defendant DHB Industries, Inc. (the "Company") develops, manufactures and distributes bullet and projectile resistant garments and related ballistic accessories and technologies for the United States military and law enforcement agencies. The Company is a Delaware corporation with its principal place of business in Pompano Beach, Florida. (Compl. ¶ 8.) The Company has not held an annual meeting of stockholders for the election of directors since May 2005. (Compl. ¶¶ 2, 13.)[2]

## B.    The Company Calls its Annual Meeting.

Late in the day on Monday, November 27, 2006, the Company filed a Form 8-K, disclosing, for the first time publicly, the fact that it intended to hold an annual meeting of stockholders at which directors would be elected a mere eight days later on Tuesday, December 5, 2006. (Compl. ¶ 22.); DHB Industries, Inc., Current Report, Form 8-K (filed November 27, 2006), attached hereto as Exhibit A.[3] The entire disclosure made to its stockholders about an event of such importance was as follows:

> The Board of Directors of DHB Industries, Inc. ("DHB" or the "Company") called the 2006 Annual Meeting of Stockholders for December 5, 2006 for the purpose of electing directors to hold office during the year following the annual meeting and until their successors are elected and qualified. The close of business on November 21,

[2]    In the meantime, the Company has had massive write-downs, stockholder and derivative lawsuits filed against it, SEC and criminal investigations initiated against the Company and former members of management, two of whom have been indicted. In addition, the Company has had to re-examine its prior financial statements and has been unable to provide audited financial statements for 2005 or the first three quarters of 2006. *See* Compl. ¶¶ 3, 4, 14-18.

[3]    This Court may take judicial notice of documents required by law to be filed with the SEC. *See In re Digital Island Sec. Litig.*, 357 F.3d 322, 325 (3d Cir. 2004).

> 2006 has been fixed as the date for determining the stockholders who are entitled to notice of and to vote at the annual meeting.
>
> The Company has not yet completed the audit of its fiscal year 2005 and is in the process of re-auditing prior periods. Therefore, the Company is not permitted to distribute a proxy statement or to solicit proxies for the annual meeting. Accordingly, a stockholder wishing to vote must either vote in person at the meeting or make arrangements to grant a proxy to another person who will attend the meeting and vote. If a stockholder's shares are held in "street name" at a brokerage firm, such stockholder will need to request an "assignment of proxy," "legal proxy" or other appropriate delegation of authority to vote from the broker and present that assignment of proxy or legal proxy at the meeting.

Ex. A at 2.

Despite the fact that this was the first notice almost any stockholder reading the Form 8-K could have received about the meeting, there is no mention of even the city in which the meeting will be held—let alone the address or time. (Compl. ¶ 23.)

Plaintiff very recently received from its broker the notice of the meeting as is required by Delaware law. (Compl. ¶ 24.) Upon information and belief, the notices were sent via United States First Class Mail late in the day on Wednesday, November 22, 2006—the night before Thanksgiving and the following holiday weekend. (*Id.*) The Company knew that the first notice that the vast majority of stockholders who are not management or directors would receive would be when the Form 8-K was filed five days later. (*Id.*)

The Form 8-K claims that the date for the purpose of establishing the stockholders entitled to notice of and vote at the meeting is November 21, 2006. Ex. A at 2. However, the cover of the Form 8-K claims that the "date of earliest event reported" is November 22, 2006. Ex. A at 1. It is, thus, not at all clear from the notice when the Board met to

set that record date or whether the Board violated Delaware law by setting a retroactive record date.

Any Company stockholder who wants to try to exercise his or her right to vote at the meeting has three choices (once able to find out the city, address and time of the meeting):

> 1.    Incur the time and expense involved in personally traveling to the meeting location;
>
> 2.    Identify someone else who is going to travel in person to the meeting, figure out on his or her own how to draft and execute a proxy and send it along with the other person; or
>
> 3.    If the stockholder holds in street name (by far the most common method by which the Company's stockholders hold their stock), (a) decipher the cryptic instructions to "request an 'assignment of proxy,' 'legal proxy' or other appropriate delegation of authority to vote from the broker," (b) reach someone at the brokerage house to make such a request, (c) receive back the necessary paperwork and even then, (d) incur the time and expense involved in personally traveling to the meeting location—all of which steps would have to be accomplished in a matter of several days.

The two paragraph text of the Form 8-K remains the only communication the Company has filed with the SEC about the upcoming meeting, in clear disregard of the duty under federal law to send an information statement and annual report to stockholders if there will be an annual meeting of stockholders at which directors will be elected.

It would be impossible for any stockholder to nominate a slate of directors. First, no stockholder knows how many directors are up for election because the current Board recently expanded the Board and has appointed three new directors.[4] Second, they would have to assemble a slate of qualified individuals willing to serve as directors and file with

---

[4]    DHB Industries, Inc., Current Report, Form 8-K (filed November 16, 2006), attached hereto as Exhibit B at 3; DHB Industries, Inc., Current Report, Form 8-K (filed November 28, 2006), attached hereto as Exhibit C at 3.

the SEC, get cleared, and mail proxy materials. Thus, by timing the disclosure of and holding of the meeting as described above, the Company's directors precluded any stockholder from proposing an alternate slate or soliciting proxies in opposition to whatever slate the incumbent directors mount. Management and its hand-picked directors will control the Company for another year without effectively elected by the Company's stockholders.

The Company just amended the by-laws last year to reduce the required quorum from stockholders holding a majority of the outstanding stock to a one-third level,[5] the directors knew that as long as the Company's founder and largest stockholder, David H. Brooks, attends the meeting with his families' purported 28% stock ownership, the quorum requirement will likely be satisfied and the necessary plurality vote to elect themselves could be easily achieved.

## ARGUMENT

### I.    The Applicable Legal Standard.

A temporary restraining order is an emergency remedy issued "to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." *Tootsie Roll Indus., Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987). In granting a temporary restraining order, the court "must attempt to minimize the probable harm to legally protected interests between the time that the

---

[5]    DHB Industries, Inc., Current Report, Form 8-K (filed Apr. 19, 2006), attached hereto as Exhibit D at 3.

motion for a preliminary injunction is filed and the time of the final hearing." *Constructors Ass'n of Western Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978).

In this Circuit, "[g]enerally speaking, courts apply the standards for granting a preliminary injunction in determining the propriety of issuing a temporary restraining order." *Tootsie Roll*, 666 F. Supp. at 658. In determining whether the entry of a temporary restraining order is warranted the court must consider whether: "(1) the movant has shown that there is a reasonable likelihood that it will succeed on the merits; (2) the movant has demonstrated that it will suffer irreparable harm absent the relief sought; (3) other parties will be substantially injured by the relief; and (4) where the public interest lies." *Id.* No one factor will determine whether the court will enter a temporary restraining order and rather, all of these elements must be balanced. *Constructors Ass'n*, 573 F.2d at 815. Under this sliding scale, the greater the moving party's likelihood of prevailing on the merits, the less strongly it must show that the balance of harms weighs in its favor. *See id.*

As set forth below, Harbinger has established that it is entitled to a temporary restraining order, enjoining the Company from holding its annual meeting pending the outcome of plaintiff's motion for a preliminary injunction.

## II.     Harbinger Is Entitled to a TRO On the Section 14(c) Claim.

### A.     Harbinger Is Likely to Prevail On the Merits of the Section 14(c) Claim.

The purpose of Section 14(c) "is to prevent registrants from avoiding their disclosure obligations by the simple expedient of declining to solicit proxies in connection with any meeting of stockholders." *New Castle Partners, L.P. v. Vesta Ins. Group, Inc.,* 887 A.2d 975, 981 (Del. Ch.), *aff'd*, 906 A.2d 807 (Del. 2005) (TABLE));

6

*see also* Louis Loss *et al.*, Securities Regulation, 2120.4 (2000 ed.) (stating Section 14(c)

arose out of the concern that issuers were avoiding their disclosure obligations under

Section 14(a) by merely declining to solicit proxies). "This is consistent with Congress's

original purpose in including proxy regulation in the 1934 Act that management of

properties owned by the investing public should not be permitted to perpetuate

themselves by the misuse of corporate proxies." *Id.*[6]*; cf. J.I. Case Co. v. Borak*, 377 U.S.

426, 431 (1964) (Section 14(a) "stemmed from the congressional belief that fair

corporate suffrage is an important right that should attach to every equity security bought

on a public exchange.") The provision was intended to promote the free exercise of the

voting rights of stockholders by ensuring that proxies would be solicited with explanation

to the stockholder of the real nature of the questions for which authority to cast his vote is

sought. *Id.*

To address these broad remedial purposes, Section 14(c) and Rules 14c-2 and

14c-3 dictate the substance and timing of proxy solicitations. Section 14(c) states:

> Unless proxies, consents, or authorizations in respect of a security
> registered pursuant to section 781, or a security issued by an investment
> company registered under the Investment Company Act of 1940, are
> solicited by or on behalf of the management of the issuer from the holders
> of record of such security in accordance with the rules and regulations
> prescribed under subsection (a) of this section, prior to any annual or other
> meeting of the holders of such security, such issuer shall, in accordance
> with rules and regulations prescribed by the Commission, file with the
> Commission and transmit to all holders of record of such security
> information substantially equivalent to the information which would be
> required to be transmitted if a solicitation were made, but no information
> shall be required to be filed or transmitted pursuant to this subsection
> before July 1, 1964.

---

[6] All emphasis is added and all internal quotations are omitted throughout this Brief
unless otherwise noted.

7

15 U.S.C. § 78n(c). Rule 14c-2 provides that:

> In connection with every annual or other meeting of the holders of the class of securities registered pursuant to s of the Act or of a class of securities issued by an investment company registered under the Investment Company Act of 1940 that has made a public offering of securities, including the taking of corporate action by the written authorization or consent of security holders, the registrant shall transmit a written information statement containing the information specified in Schedule 14C (Rule 14c-101) or written information statements included in registration statements filed under the Securities Act of 1933 on Form S-4 or F-4…or Form N-14…, and containing the information specified in such form, to every security holder of the class that is entitled to vote or give an authorization or consent in regard to any matter to be acted upon and from whom proxy authorization or consent is not solicited on behalf of the registrant pursuant to Section 14(a) of the Act. … The information statement shall be sent or given a*t least 20 calendar days prior to the meeting date.*

17 C.F.R. § 240.14c-2.

Thus, the Rule requires (with exceptions not applicable here) that in connection with every meeting of stockholders or action pursuant to written consent, an information statement must be transmitted to the stockholders entitled to vote or consent, and such information statement must be sent out 20 days or more before the meeting date. *See generally id.* Similarly, Rule 14c-3 requires that under these circumstances, the Company is required to send an annual report to its stockholders. 17 C.F.R. § 240.14c-3.

The Company has not transmitted its information statement or its annual report despite the fact that it has noticed the annual meeting for Tuesday, December 5, 2006. (Compl., COUNT I.) The timing of its notice does not even comply with the basic timing requirements. The Company mailed out notice of the meeting on the Wednesday before the 4-day-long Thanksgiving weekend, and then filed a Form 8-K disclosing the date of the meeting with the SEC at 4:53 p.m. on Monday, November 27. (Compl. ¶ 24.) This is woefully less than what is essential for the Company to provide its stockholders all

8

material information prior to an annual meeting. *See Citizens First Bancorp., Inc. v. Harreld*, 559 F. Supp. 867 (W.D. Ky 1982) (finding the "principle [sic] objective of the federal securities laws [§ 14(c)] is the dissemination of information and not oversight of corporate politics" and enjoining a stockholders' meeting on Section 14(c) grounds).

Finally, the Company's decision not to send out an information statement or annual report results in the Company's stockholders being denied an opportunity to cast an informed vote for its board of directors—as a practical matter entrenching the same five directors who comprised the Board when all of the problems occurred (write offs, investigations, indictment, etc.). This is contrary to Delaware law, which holds that "[t]he right of stockholders to elect directors is a fundamental component of stockholder authority." *McIlquham v. Feste*, 2000 WL 244859, at *6 (Del. Ch. Feb. 13, 2006).

Thus, Harbinger has a strong probability of succeeding on the merits in the face of a *prima facie* violation of Section 14(c) and Rules 14c-2 and 14c-3 of the 1934 Act.

## B. Harbinger (as well as the other stockholders) Will Suffer Irreparable Injury if the Court Does Not Issue the Temporary Restraining Order on its 14(c) Claim.

"Irreparable injury results … when the free exercise of shareholders' voting rights will be frustrated." *Krauth v. Executive Telecard, Ltd.*, 890 F. Supp. 269, 287 (S.D.N.Y. 1995); *see also Lichtenberg v. Besicorp. Group, Inc.*, 43 F. Supp. 2d 376, 390 (S.D.N.Y. 1999); *ODS Tech., L.P. v. Marshall*, 832 A.2d 1254, 1262-63 (Del. Ch. 2003) ("The threat of an uninformed stockholder vote constitutes irreparable harm."). Despite not being asked to vote, the stockholders are entitled to vote for the election of directors. Because Harbinger has shown that the Company has *prima facie* violated Section 14(c) and Rules 14c-2 and 14c-3 of the 1934 Act, it has established the threat of irreparable

9

harm. Harbinger will suffer irreparable injury if it is deprived of the opportunity to make a fully informed decision regarding issues to be decided at the Company's annual meeting.

Congress believed in enacting proxy regulations that "fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange." *Borak*, 377 U.S. at 431. There can be no serious question that Harbinger will suffer irreparable harm if a temporary restraining order is not issued. *Cf. Harreld* 559 F. Supp. at 874. (Court granted injunction on showing that information statement was required to comply with Rule 14c-2 and without further showing of irreparable harm). In recognizing the importance of a Section 14(c) and Rule 14c-2 information statement, the *Harreld* Court held, "[w]hile the information statement may be of a limited nature…it will still have to be sent to shareholders [to enable them to vote on a hostile transaction]." *Id.* at 874.

### C.    The Balancing of Hardships Weighs in Harbinger's Favor.

Because Harbinger has shown that it is likely to succeed on the merits, it need not show that the balance of hardships tips decidedly in its favor. *See Constructors Ass'n*, 573 F.2d at 815. However, an examination of the facts shows that the balance of hardships clearly weighs in favor of Harbinger in any event.

With the annual meeting less than a week away, Harbinger has no meaningful access to current information upon which it may base its decision to vote its shares. Thus, the Company's decision to ignore federal securities laws has effectively denied Harbinger's right to shareholder suffrage and squarely offended both the letter and the purpose of Section 14(c) and Rules 14c-2 and 14c-3. *See* Loss, Securities Regulation at

10

2120.4 (Section 14(c) is designed to prevent attempts at avoiding 14(a) disclosure requirements). Without a temporary restraining order in place, Harbinger will not be afforded the necessary protection to guard against these serious threats to its ability to vote its shares.

Other the other hand, the Company will face no hardship from this Court's entry of a temporary restraining order. The Company has not held a meeting for over 18 months—providing an information statement and annual report and additional time for stockholders to make an informed election will inflict no harm upon the Company. (Compl. ¶ 13.) Indeed, the entry of the proposed TRO would merely prevent the Company from knowingly and willfully continuing to violate federal securities laws.[7]

---

[7]   Although a security bond may be required as a condition to a court entering a temporary restraining order, there are instances when a court has the discretion to waive the bond requirement. *See* Fed. R. Civ. P. 65(c) ("in such amounts as the court deems proper"). Courts in other circuits have found that a court may "dispense with security where there has been no proof of likelihood of harm to the party enjoined." *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974). As shown, the Company faces little potential harm, and no monetary harm, from this Court's issuing a temporary restraining order. The Company will not be harmed by the Court's delay of the meeting, and requiring a bond from Harbinger will only result in additional hardship to Harbinger due to the Company's actions.

This Circuit has found that when a court considers whether to require a bond, it should balance the "equities of the potential hardships that each party would suffer as a result of a preliminary injunction." *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996). Particularly, the court should consider "the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant." *Temple Univ. v. White*, 941 F.2d 201, 219 (3d Cir. 1991). Due to the absence of any harm --- much less monetary harm -- to the Company, and the further hardships which the Court would impose on Harbinger if it required a bond, this Court should use its discretion to waive security for this temporary restraining order.

11

**D.    The Public Interest Favors Entry of the Temporary Restraining Order.**

"As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994); *see also Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 730 (3d Cir. 2004).

## CONCLUSION

For the foregoing reasons, Harbinger respectfully requests that the Court enter a temporary restraining order, enjoining the Company from holding its annual meeting pending the outcome of Plaintiff's motion for a preliminary injunction.

OF COUNSEL:

Stephen D. Alexander
Susan C. Chun
Bingham McCutchen LLP
355 So. Grand Avenue
Suite 4400
Los Angeles, California 90071
(213) 680-6400

P. Sabin Willett
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8775

Dated:  November 30, 2006

Anne C. Foster (#2513)
Foster@rlf.com
Michael R. Robinson (#4452)
Robinson@rlf.com
Daniel M. Silver (#4758)
Silver@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
    Attorneys for Plaintiff Harbinger Capital
    Partners Master Fund I, Ltd.

12

RLF1-3086814-6

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 R9DQXUX9ZhHXXkepZy3B1xvKjMU6G3TErOKHS6oR6CoeM47XlWj9HSIo13VVMVML
 Gwpp8crkdLJ7oGeHtMN8IA==

```
<SEC-DOCUMENT>0001092306-06-000712.txt : 20061127
<SEC-HEADER>0001092306-06-000712.hdr.sgml : 20061127
<ACCEPTANCE-DATETIME>20061127165314
ACCESSION NUMBER:              0001092306-06-000712
CONFORMED SUBMISSION TYPE:     8-K
PUBLIC DOCUMENT COUNT:         1
CONFORMED PERIOD OF REPORT:    20061122
ITEM INFORMATION:              Other Events
FILED AS OF DATE:              20061127
DATE AS OF CHANGE:             20061127

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:            DHB INDUSTRIES INC
                CENTRAL INDEX KEY:                 0000899166
                STANDARD INDUSTRIAL CLASSIFICATION: ORTHOPEDIC, PROSTHETIC & SURGICAL
                IRS NUMBER:                        113129361
                STATE OF INCORPORATION:            DE
                FISCAL YEAR END:                   1231

        FILING VALUES:
                FORM TYPE:            8-K
                SEC ACT:             1934 Act
                SEC FILE NUMBER:     001-13112
                FILM NUMBER:         061239912

        BUSINESS ADDRESS:
                STREET 1:            555 WESTBURY AVE
                CITY:                CARLE PLACE
                STATE:               NY
                ZIP:                 11514
                BUSINESS PHONE:      5169971155

        MAIL ADDRESS:
                STREET 1:            555 WESTBURY AVE
                CITY:                CARLE PLACE
                STATE:               NY
                ZIP:                 11514

        FORMER COMPANY:
                FORMER CONFORMED NAME: DHB CAPITAL GROUP INC /DE/
                DATE OF NAME CHANGE:   19960518
</SEC-HEADER>
<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<FILENAME>dhb8k.txt
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 8-K
CURRENT REPORT

Pursuant to Section 13 OR 15(d) of The Securities Exchange Act of 1934

Date of Report (Date of earliest event reported): November 22, 2006

DHB INDUSTRIES, INC.
_____

(Exact name of registrant as specified in its charter)

| Delaware | 001-13112 | 11-3129361 |
|---|---|---|
| (State of Incorporation) | (Commission File Number) | (IRS Employer Identification Number) |

2102 SW 2nd Street, Pompano Beach, Florida              33069
_____              _____

(Address of principal executive office)                (Zip Code)

(954) 630-0900
_____

(Registrant's telephone number, including area code)

Not Applicable
_____

(Former Address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

[ ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

1

`<PAGE>`

ITEM 8.01        OTHER EVENTS.

        The Board of Directors of DHB Industries, Inc. ("DHB" or the "Company")
called the 2006 Annual Meeting of Stockholders for December 5, 2006 for the
purpose of electing directors to hold office during the year following the
annual meeting and until their successors are elected and qualified. The close
of business on November 21, 2006 has been fixed as the date for determining the
stockholders who are entitled to notice of and to vote at the annual meeting.

        The Company has not yet completed the audit of its fiscal year 2005 and
is in the process of re-auditing prior periods. Therefore, the Company is not
permitted to distribute a proxy statement or to solicit proxies for the annual
meeting. Accordingly, a stockholder wishing to vote must either vote in person
at the meeting or make arrangements to grant a proxy to another person who will
attend the meeting and vote. If a stockholder's shares are held in "street name"
at a brokerage firm, such stockholder will need to request an "assignment of
proxy," "legal proxy" or other appropriate delegation of authority to vote from
the broker and present that assignment of proxy or legal proxy at the meeting.

2

`<PAGE>`

                              SIGNATURES

        Pursuant to the requirements of the Securities Exchange Act of 1934,
the registrant has duly caused this report to be signed on its behalf by the
undersigned hereunto duly authorized.

                    DHB INDUSTRIES, INC.

                    By: /s/ THOMAS C. CANFIELD
                    _____
                    Name:    Thomas C. Canfield
                    Title:   General Counsel & Secretary

Dated:   November 27, 2006

```
                                        3
</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>
-----END PRIVACY-ENHANCED MESSAGE-----
```

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 H1v3qmVc4mN2Em/BGj2ijNQcPBRFKqwm1PGeVO3wsMv3JFUxTexNJAC4HkDwJQ6S
 PbiCRoLEmMlh9k5Sa8x3LA==

<SEC-DOCUMENT>0001092306-06-000702.txt : 20061116
<SEC-HEADER>0001092306-06-000702.hdr.sgml : 20061116
<ACCEPTANCE-DATETIME>20061116164551
ACCESSION NUMBER:               0001092306-06-000702
CONFORMED SUBMISSION TYPE:      8-K
PUBLIC DOCUMENT COUNT:          2
CONFORMED PERIOD OF REPORT:     20061109
ITEM INFORMATION:               Departure of Directors or Principal Officers; Election of
ITEM INFORMATION:               Other Events
ITEM INFORMATION:               Financial Statements and Exhibits
FILED AS OF DATE:               20061116
DATE AS OF CHANGE:              20061116

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:                     DHB INDUSTRIES INC
                CENTRAL INDEX KEY:                          0000899166
                STANDARD INDUSTRIAL CLASSIFICATION:         ORTHOPEDIC, PROSTHETIC & SURGICAL
                IRS NUMBER:                                 113129361
                STATE OF INCORPORATION:                     DE
                FISCAL YEAR END:                            1231

        FILING VALUES:
                FORM TYPE:              8-K
                SEC ACT:                1934 Act
                SEC FILE NUMBER:        001-13112
                FILM NUMBER:            061223683

        BUSINESS ADDRESS:
                STREET 1:               555 WESTBURY AVE
                CITY:                   CARLE PLACE
                STATE:                  NY
                ZIP:                    11514
                BUSINESS PHONE:         5169971155

        MAIL ADDRESS:
                STREET 1:               555 WESTBURY AVE
                CITY:                   CARLE PLACE
                STATE:                  NY
                ZIP:                    11514

        FORMER COMPANY:
                FORMER CONFORMED NAME:  DHB CAPITAL GROUP INC /DE/
                DATE OF NAME CHANGE:    19960518
</SEC-HEADER>
<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<FILENAME>form8k.txt

<DESCRIPTION>FORM 8-K DATED 11-09-06
<TEXT>

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 8-K
CURRENT REPORT

PURSUANT TO SECTION 13 OR 15(D) OF THE SECURITIES EXCHANGE ACT OF 1934

DATE OF REPORT (DATE OF EARLIEST EVENT REPORTED): NOVEMBER 9, 2006

DHB INDUSTRIES, INC.
(Exact name of registrant as specified in its charter)

| DELAWARE | 001-13112 | 11-3129361 |
|---|---|---|
| (State of Incorporation) | (Commission File Number) | (IRS Employer Identification Number) |

2102 SW 2ND STREET, POMPANO BEACH, FLORIDA                    33069

(Address of principal executive office)                    (Zip Code)

(954) 630-0900

(Registrant's telephone number, including area code)

NOT APPLICABLE

(Former Address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to
simultaneously satisfy the filing obligation of the registrant under any of the
following provisions:

[ ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR
    230.425)

[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR
    240.14a-12)

[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange
    Act (17 CFR 240.14d-2(b))

[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange
    Act (17 CFR 240.13e-4(c))

<PAGE>

ITEM 5.02. DEPARTURE OF DIRECTORS OR PRINCIPAL OFFICERS; ELECTION OF DIRECTORS;
          APPOINTMENT OF PRINCIPAL OFFICERS.

    (d)

On November 13, 2006, the Board of Directors of DHB Industries, Inc. (the "Company") elected Jack A. Henry as a director. Mr. Henry will serve as Chairman of the Audit Committee of the Board of Directors of the Company.

Mr. Henry held positions with Arthur Andersen LLP from 1982 to 2000. In 2000, Mr. Henry retired as Managing Partner of the Phoenix office and formed Sierra Blanca Ventures LLC, a private advisory and investment firm. Since 2001, Mr. Henry has served as a director of Vodavi Technology Inc., a public company and provider of communications solutions. Committee memberships include Audit, Compensation, Corporate Governance and Nominating (Chair). Since 2004, Mr. Henry has served as a director of White Electronic Designs Corporation a public company and provider of advanced technology solutions. Committee membership includes Audit (Chair). Since 2005, Mr. Henry has served as a director of Vista Care Inc., a public company and provider of hospice service in the US. Committee memberships include Audit (Chair) and Investment. Mr. Henry previously served on the Board of Directors of Simula, Inc., Tickets.com and SOS Staffing Services, Inc., all public companies. Mr. Henry has served in a variety of community positions including Chairman of the Arizona Chamber of Commerce and Greater Phoenix Leadership and currently serves as President of the Arizona Chapter of the National Association of Corporate Directors.

Concurrent with Mr. Henry's appointment, DHB Industries elected to increase the Board of Directors from five to six members, of which five are independent Directors.

Also on November 13, 2006, Mr. Henry received, in connection with his election to the Board of Directors, warrants to acquire 6,986 shares of the Company's common stock, which represents a pro rata portion of the 2006 directors' compensation for the remainder of the year 2006. The warrants are exercisable at $2.25, the closing price of the common stock on November 13, 2006.

The press release issued by the Company on November 16, 2006 with respect to Mr. Henry's election is filed herewith as Exhibit 99.1.

ITEM 8.01 OTHER EVENTS

On November 9, 2006, the Board of Directors of the Company approved and adopted revised compensation arrangements for non-employee directors, effective January 1, 2007. Under the revised plan, each non-employee director of the Company's Board of Directors (the "Board") will receive:

o    A base annual retainer of $25,000 for service as a member of the Board,

<PAGE>

o    Additional annual retainers of $50,000 for service as the Chairman of the Board and of $10,000 for service as Chair of each of the Audit, Compensation and Nominating/Governance Committees of the Board,
o    A meeting fee equal to $2,500 for each Board meeting and each Audit or Compensation Committee meeting attended in person, or $1,250 for each such meeting attended by telephone,
o    A meeting fee equal to $1,500 for each Nominating/Governance Committee meeting attended in person, or $750 for each such meeting attended by telephone,
o    An incentive award payable in restricted stock or stock equivalents of $75,000 to each director and $150,000 to the Chairman of the Board, in each case vesting in equal annual installments over three years,

beginning on the date of grant.

Annual retainers will be payable in cash and in equivalent value of Company restricted stock or stock equivalents, provided that the portion of annual retainers payable in such stock-based compensation will account for a minimum of 50% of the aggregate amount of such annual retainers (and, subject to the election of each director, up to 100% of such aggregate amount). The cash portion of annual retainer will be payable quarterly. The amount of restricted stock or stock equivalents awarded will be based on the market price of the Company's common stock on the date of grant and will vest in three equal, annual installments beginning on the date of the grant. To the extent that the Company does not have a current effective registration statement available to register such stock, it will be issued as unregistered stock under an applicable exemption to the registration requirements of the Securities Act of 1933 or reserved for issuance at a future date when an appropriate registration statement becomes effective.

Meeting fees will be paid in cash. If any committee meets on the same day as a Board meeting, only the Board meeting fee will be payable.

Directors who are also officers of the Company do not receive any fees or other compensation for service as a director. All directors are reimbursed for reasonable expenses in connection with their services as directors.

ITEM 9.01 FINANCIAL STATEMENTS AND EXHIBITS.

> (d)  Exhibits
> 99.1      Press Release, dated November 16, 2006

<PAGE>


                              SIGNATURES

        Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.


                              DHB INDUSTRIES, INC.


                              By: /s/ THOMAS C. CANFIELD
                                  _____

                                  Name: Thomas C. Canfield
                                  Title:  General Counsel & Secretary


Dated:  November 16, 2006

<PAGE>


                           EXHIBIT INDEX

99.1    Press Release, dated November 16, 2006.


</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-99.1
<SEQUENCE>2
<FILENAME>ex99-1.txt
<DESCRIPTION>PRESS RELEASE
<TEXT>

EXHIBIT 99.1

[LETTERHEAD OF DHB INDUSTRIES, INC.]

2101 SW 2ND STREET    POMPANO BEACH, FL  33069
TEL: 954-630-0900    WWW.DHBINDUSTRIES.COM


COMPANY CONTACT: Media Relations/Investor Relations
Glenn Wiener
212-786-6013
pr@dhbt.com or ir@dhbt.com

FOR IMMEDIATE RELEASE

DHB INDUSTRIES ANNOUNCES APPOINTMENT OF JACK. A. HENRY TO BOARD OF DIRECTORS

POMPANO BEACH, FLORIDA, NOVEMBER 16, 2006 - DHB Industries Inc. (OTC Pink Sheets: DHBT.PK), a leader in the field of protective body armor, announced today the appointment of Jack A. Henry to its Board of Directors. In addition to his election as Director, Mr. Henry will also serve as Chairman of the Audit Committee.

Mr. Henry is the founder of Sierra Blanca Ventures, LLC, a private advisory and investment firm. Prior to founding the Company in 2000, he served as Managing Partner of the Phoenix office of Arthur Andersen LLP, and spent over 18 years there in various consulting and managerial positions. Mr. Henry currently serves on the Board of Directors of Vodavi Technology Inc. (NASDAQ: VTEK), a provider of communications solutions, White Electronic Designs Corporation (NASDAQ: WDEC), a provider of advanced technology solutions and Vista Care Inc. (NASDAQ: VSTA), a provider of hospice service in the U.S. Furthermore, Mr. Henry sits on various committees for each, including the Audit, Compensation, Corporate Governance and Nominating committees of Vodavi Technology; he serves as the Chairman of the Audit Committees of White Electronics and Vista Care, where he also serves on the Investment Committee. Mr. Henry previously served on the Board of Directors of Simula, Inc., Tickets.com and SOS Staffing Services, Inc., all publicly traded companies.

Senator William Campbell, DHB's Chairman of the Board stated, "It is with great pleasure that we welcome Jack to our Board of Directors. I look forward to working with him personally and believe he will be a tremendous asset to our organization given his extensive experience in finance, consulting and operations, as well as his diverse board experience. Jack's knowledge and track record in the areas of corporate governance and compliance will serve our company well, both now and into the future."

Mr. Henry is an active member in the Arizona community, serving as

President of the Arizona Chapter of the National Association of Corporate Directors and previously served as Chairman of the Arizona Chamber of Commerce. Mr. Henry holds both a Bachelors and Masters of Business Administration from the University of Michigan.

Concurrent with Mr. Henry's appointment, DHB Industries elected to increase the Board of Directors from five to six members, of which five are independent Directors.

-MORE-

<PAGE>

ABOUT DHB INDUSTRIES INC

DHB Industries Inc.'s highly recognized subsidiaries, Point Blank Body Armor, Inc. (www.pointblankarmor.com) and Protective Apparel Corporation of America (PACA) (www.pacabodyarmor.com) are in the protective body armor industry and are focused on the design, manufacture, and distribution of bullet resistant and protective body armor for military, law enforcement, and corrections in the U.S. and worldwide. Company subsidiary NDL Products, Inc. (www.ndlproducts.com) produces and markets a comprehensive line of athletic supports and braces which are merchandised through national superstore chains, as well as through private label distributors.

The Company maintains facilities in Deerfield Beach, FL, Oakland Park, FL, Pompano Beach, FL, Jacksboro, TN and Washington, DC. To learn more about DHB Industries Inc. visit the website at (www.dhbindustries.com).

SAFE HARBOR STATEMENT UNDER THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995: THE STATEMENTS WHICH ARE NOT HISTORICAL FACTS CONTAINED IN THIS PRESS RELEASE ARE FORWARD-LOOKING STATEMENTS, WHICH ARE BASED LARGELY ON THE COMPANY'S EXPECTATIONS AND ARE SUBJECT TO VARIOUS BUSINESS RISKS AND UNCERTAINTIES, CERTAIN OF WHICH ARE BEYOND THE COMPANY'S CONTROL. WORDS SUCH AS "EXPECTS," "ANTICIPATES," "TARGETS," "GOALS," "PROJECTS," "INTENDS," "PLANS," "BELIEVES," "SEEKS," "ESTIMATES," VARIATIONS OF SUCH WORDS, AND SIMILAR EXPRESSIONS ARE INTENDED TO IDENTIFY SUCH FORWARD-LOOKING STATEMENTS. THESE FORWARD-LOOKING STATEMENTS ARE ONLY PREDICTIONS THAT SPEAK AS OF THE DATE HEREOF AND ARE SUBJECT TO RISKS, UNCERTAINTIES AND ASSUMPTIONS THAT ARE DIFFICULT TO PREDICT. THEREFORE, ACTUAL RESULTS MAY DIFFER MATERIALLY AND ADVERSELY FROM THOSE EXPRESSED IN ANY FORWARD-LOOKING STATEMENTS. FACTORS THAT MIGHT CAUSE OR CONTRIBUTE TO SUCH DIFFERENCES INCLUDE, BUT ARE NOT LIMITED TO, (1) EXPECTATIONS AS TO THE TIMING OF THE FILING OF THE REPORT ON FORM 10-K FOR THE FISCAL YEAR ENDED DECEMBER 31, 2005 AND THE QUARTERLY REPORT ON FORM 10-Q FOR THE QUARTERLY PERIOD ENDED MARCH 31, 2006, (2) ANY LISTING REQUIREMENTS WHICH MAY BE PRESCRIBED OR ANY DETERMINATION WHICH MAY BE MADE BY THE AMERICAN STOCK EXCHANGE, (3) UNCERTAINTY OF FUTURE FINANCIAL RESULTS, (4) ADDITIONAL FINANCING REQUIREMENTS, (5) DEVELOPMENT OF NEW PRODUCTS, (6) GOVERNMENT APPROVAL PROCESSES, INCLUDING APPROVAL OF THE SETTLEMENT BY THE COURT, (7) THE IMPACT OF COMPETITIVE PRODUCTS OR PRICING, (8) TECHNOLOGICAL CHANGES, (9) THE EFFECT OF POLITICAL AND ECONOMIC CONDITIONS, (10) THE OUTCOME AND IMPACT OF LITIGATION TO WHICH THE COMPANY IS A PARTY AND THE SECURITIES AND EXCHANGE COMMISSION AND OTHER INVESTIGATIONS REGARDING THE COMPANY, AND (11) OTHER UNCERTAINTIES DETAILED IN THE COMPANY'S FILINGS WITH THE SECURITIES AND EXCHANGE COMMISSION. YOU ARE CAUTIONED NOT TO PLACE UNDUE RELIANCE ON THESE FORWARD-LOOKING STATEMENTS THAT SPEAK ONLY AS OF THE DATE HEREOF. THE COMPANY UNDERTAKES NO OBLIGATION TO REVISE OR UPDATE PUBLICLY ANY FORWARD-LOOKING STATEMENTS TO REFLECT ANY CHANGE IN THE EXPECTATIONS OF OUR MANAGEMENT WITH REGARD THERETO OR

ANY CHANGE IN EVENTS,    CONDITIONS, OR CIRCUMSTANCES ON WHICH ANY SUCH STATEMENTS
ARE BASED.

- #### -

```
</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>
-----END PRIVACY-ENHANCED MESSAGE-----
```

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 HVNgvOIbD/qmZmd44juJJK++qOK0GosZT2F/Ax40nfgEDQkllwRsr6la8U8n5lHd
 6SjiXXg/x7sWiPVMctatxQ==

<SEC-DOCUMENT>0001092306-06-000714.txt : 20061128
<SEC-HEADER>0001092306-06-000714.hdr.sgml : 20061128
<ACCEPTANCE-DATETIME>20061128135855
ACCESSION NUMBER:         0001092306-06-000714
CONFORMED SUBMISSION TYPE: 8-K
PUBLIC DOCUMENT COUNT:    2
CONFORMED PERIOD OF REPORT: 20061122
ITEM INFORMATION:         Departure of Directors or Principal Officers; Election of
ITEM INFORMATION:         Financial Statements and Exhibits
FILED AS OF DATE:         20061128
DATE AS OF CHANGE:        20061128

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:            DHB INDUSTRIES INC
                CENTRAL INDEX KEY:                 0000899166
                STANDARD INDUSTRIAL CLASSIFICATION: ORTHOPEDIC, PROSTHETIC & SURGICAL
                IRS NUMBER:                        113129361
                STATE OF INCORPORATION:            DE
                FISCAL YEAR END:                   1231

        FILING VALUES:
                FORM TYPE:        8-K
                SEC ACT:          1934 Act
                SEC FILE NUMBER:  001-13112
                FILM NUMBER:      061241767

        BUSINESS ADDRESS:
                STREET 1:         555 WESTBURY AVE
                CITY:             CARLE PLACE
                STATE:            NY
                ZIP:              11514
                BUSINESS PHONE:   5169971155

        MAIL ADDRESS:
                STREET 1:         555 WESTBURY AVE
                CITY:             CARLE PLACE
                STATE:            NY
                ZIP:              11514

        FORMER COMPANY:
                FORMER CONFORMED NAME: DHB CAPITAL GROUP INC /DE/
                DATE OF NAME CHANGE:   19960518
</SEC-HEADER>
<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<FILENAME>dhb8k.txt
<DESCRIPTION>FORM 8-K DATED 11-22-06 - #2

<TEXT>

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 8-K
CURRENT REPORT

PURSUANT TO SECTION 13 OR 15(D) OF THE SECURITIES EXCHANGE ACT OF 1934

DATE OF REPORT (DATE OF EARLIEST EVENT REPORTED): NOVEMBER 22, 2006

DHB INDUSTRIES, INC.
_____
(Exact name of registrant as specified in its charter)

| DELAWARE | 001-13112 | 11-3129361 |
|---|---|---|
| (State of Incorporation) | (Commission File Number) | (IRS Employer Identification Number) |

2102 SW 2ND STREET, POMPANO BEACH, FLORIDA                     33069
_____
(Address of principal executive office)                     (Zip Code)

(954) 630-0900
_____
(Registrant's telephone number, including area code)

NOT APPLICABLE
_____
(Former Address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to
simultaneously satisfy the filing obligation of the registrant under any of the
following provisions:

[ ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR
    230.425)

[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR
    240.14a-12)

[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange
    Act (17 CFR 240.14d-2(b))

[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the
    Exchange Act (17 CFR 240.13e-4(c))

<PAGE>

ITEM 5.02.   DEPARTURE OF DIRECTORS OR PRINCIPAL OFFICERS; ELECTION OF DIRECTORS;
             APPOINTMENT OF PRINCIPAL OFFICERS.

(d)

On November 22, 2006, the Board of Directors of DHB Industries, Inc. (the "Company") elected David Bell and Maurice J. Hannigan as directors.

Mr. Bell is Chairman Emeritus of the Interpublic Group, a public company and one of the world's leading organizations of advertising agencies and marketing services companies, a position he has held since January 2005. Mr. Bell was Chief Executive Officer of Interpublic from 2003 to 2005 and joined the Company as Vice Chairman in 2001. Previously, Mr. Bell was Chairman and Chief Executive Officer of True North Communications Inc., a public company, and prior to that was President and CEO of Bozell Worldwide. He came to Bozell in 1975 when the agency acquired Knox Reeves Advertising, where he had been President since 1972.

A member of the Ad Council's Board of Directors since 1997, Bell served as its Chairman from June 2002 until May 2003. Bell also served as Chairman of the American Association of Advertising Agencies in 1996-1997 and was a two-time Chairman of the American Advertising Federation. He is currently Chairman of the Advertising Educational Foundation and of PRO-AD PAC, the industry's Political Action Committee. Additionally, Mr. Bell serves on the Board of Directors of Primedia Inc. and as an independent director for Warnaco Group, Inc., both public companies. Mr. Bell is a graduate of Macalester College in St. Paul, Minnesota and went on to become the college's youngest trustee. He received both the Macalester College Distinguished Alumni Award and its Charter Centennial Medallion.

Mr. Hannigan enjoyed a thirty-one year career with the California Highway Patrol, holding a variety of positions, including the last 7 years as Commissioner, before retiring in 1995. Since his retirement, Mr. Hannigan has been involved in a number of academic and advisory programs and currently sits on the Board of Directors of the National Executive Institute Associates of the Federal Bureau of Investigation Academy in Quantico, Virginia. He is a member of the Advocates for Highway Safety Committee, California Peace Officer's Association and the State and Provincial Division of the International Association of Chiefs of Police, where he served as Chairman from 1993-1995.

Mr. Hannigan also was Chairman of the NAFTA Law Enforcement Sub-Committee of the U.S. Department of Transportation from 1993-1995, Chairman of the 1988 U.S. Surgeon General's Workshop on Driving Under the Influence, Law Enforcement Group and Chairman of the Occupant Restraint Committee, a Traffic Safety Summit sponsored by the U.S. Secretary of Transportation. He holds a Bachelor of Arts from Golden Gate University in the Administration of Justice program, in addition to several other educational honors.

Concurrent with these two appointments, DHB Industries elected to increase the Board of Directors from six to eight members, of which seven are independent Directors.

<PAGE>

Also on November 22, 2006, each of Messrs. Bell and Hannigan received, in connection with his election to the Board of Directors, warrants to acquire 5,342 shares of the Company's common stock, which represents a pro rata portion of the 2006 directors' compensation for the remainder of the year 2006. The warrants are exercisable at $2.25, the closing price of the common stock on November 22, 2006.

The press release issued by the Company on November 28, 2006 with respect to the election of Messrs. Bell and Hannigan is filed herewith as Exhibit 99.1.

ITEM 9.01 FINANCIAL STATEMENTS AND EXHIBITS.

    (d)   Exhibits

    99.1      Press Release, dated November 28, 2006

<PAGE>

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

DHB INDUSTRIES, INC.

By: /s/ THOMAS C. CANFIELD

Name: Thomas C. Canfield
Title:  General Counsel & Secretary

Dated:   November 28, 2006

<PAGE>

## EXHIBIT INDEX

99.1      Press Release, dated November 28, 2006.

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-99

```
<SEQUENCE>2
<FILENAME>ex99-1.txt
<DESCRIPTION>EXHIBIT 99.1 - PRESS RELEASE
<TEXT>
```

                                                              EXHIBIT 99.1

DHB                              NEWS FROM DHB INDUSTRIES INC
INDUSTRIES INC.                  2102 SW 2nd Street * Pompano Beach, FL 33069
LOGO                             Tel: 954-630-0900 * www.dhbindustries.com


                    COMPANY CONTACT:  Media Relations/Investor Relations
                                      Glenn Wiener
                                      212-786-6013
                                      pr@dhbt.com or ir@dhbt.com

FOR IMMEDIATE RELEASE

                    DHB INDUSTRIES ANNOUNCES THE APPOINTMENTS OF
             DAVID BELL AND MAURICE HANNIGAN TO ITS BOARD OF DIRECTORS


        POMPANO BEACH,  FLORIDA,  NOVEMBER 28, 2006 - DHB Industries  Inc. (OTC
Pink Sheets: DHBT.PK), a leader in the field of protective body armor, announced
today the  appointments  of David Bell and Maurice  ("Maury")  J. Hannigan to its
Board of Directors.

        DAVID BELL - Mr. Bell is Chairman Emeritus of the Interpublic  Group, a
public  company  and one of the world's  leading  organizations  of  advertising
agencies and marketing services companies,  a position he has held since January
2005. Mr. Bell was Chief  Executive  Officer of Interpublic  from 2003 to 2005 and
joined the Company as Vice Chairman in 2001.  Previously,  Mr. Bell was Chairman
and Chief  Executive Officer of True North  Communications  Inc., a public company,
and prior to that was President and CEO of Bozell  Worldwide.  He came to Bozell
in 1975 when the agency  acquired  Knox Reeves  Advertising,  where he had been
President since 1972.

        A member of the Ad Council's Board of Directors since 1997, Bell served
as its Chairman  from June 2002 until May 2003.  Bell also served as Chairman of
the American Association of Advertising Agencies  in 1996-1997 and was a two-time
Chairman of the American  Advertising  Federation.  He is currently Chairman of the
Advertising  Educational  Foundation and of PRO-AD PAC, the industry's Political
Action  Committee.  Additionally,  Mr. Bell serves on the Board of  Directors of
Primedia  Inc. and as an  independent  director for Warnaco  Group,  Inc.,  both
public  companies.  Mr. Bell is a graduate of  Macalester  College in St.  Paul,
Minnesota and went on to become the college's youngest trustee.  He received both
the Macalester  College  Distinguished  Alumni Award and its Charter  Centennial
Medallion.

        MAURICE  HANNIGAN - Mr. Hannigan  enjoyed a thirty-one year career with
the California  Highway  Patrol,  holding a variety of positions,  including the
last 7 years as Commissioner, before retiring in 1995. Since his retirement,  Mr.
Hannigan has been  involved in a number of academic and  advisory  programs and
currently  sits on the Board of Directors of the  National  Executive  Institute
Associates of the Federal Bureau of Investigation Academy in Quantico, Virginia.
He is a member of the Advocates for Highway Safety  Committee,  California Peace

Officer's Association and the State and Provincial Division of the International Association of Chiefs of Police, where he served as Chairman from 1993-1995.

Mr. Hannigan also was Chairman of the NAFTA Law Enforcement Sub-Committee of the U.S. Department of Transportation from 1993-1995, Chairman of the 1988 U.S. Surgeon General's Workshop on Driving Under the Influence, Law Enforcement Group and Chairman of the Occupant Restraint Committee, a Traffic Safety Summit sponsored by the U.S. Secretary of Transportation. He holds a Bachelor of Arts from Golden Gate University in the Administration of Justice program, in addition to several other educational honors.

- MORE -

<PAGE>

Senator William Campbell, DHB's Chairman of the Board stated, "We are honored to have added both David Bell and Maury Hannigan to our Board of Directors. David's expertise in the areas of business management and marketing will be a tremendous asset to our organization, and he is recognized as a highly distinguished and reputable business executive. Maury has enjoyed a long and diverse career in the law enforcement community and has strong ties within our target market, both with law enforcement personnel and federal agencies. We are delighted to have them on board as we continue to strengthen our organization and position our company as a leader in our industry."

Concurrent with these two appointments, DHB Industries elected to increase the Board of Directors from six to eight members, of which seven are independent Directors.

ABOUT DHB INDUSTRIES INC

DHB Industries Inc.'s highly recognized subsidiaries, Point Blank Body Armor, Inc. (www.pointblankarmor.com) and Protective Apparel Corporation of America (PACA) (www.pacabodyarmor.com) are in the protective body armor industry and are focused on the design, manufacture, and distribution of bullet resistant and protective body armor for military, law enforcement, and corrections in the U.S. and worldwide. Company subsidiary NDL Products, Inc. (www.ndlproducts.com) produces and markets a comprehensive line of athletic supports and braces which are merchandised through national superstore chains, as well as through private label distributors.

The Company maintains facilities in Deerfield Beach, FL, Oakland Park, FL, Pompano Beach, FL, Jacksboro, TN and Washington, DC. To learn more about DHB Industries Inc. visit the website at (www.dhbindustries.com).

SAFE HARBOR STATEMENT UNDER THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995: THE STATEMENTS WHICH ARE NOT HISTORICAL FACTS CONTAINED IN THIS PRESS RELEASE ARE FORWARD-LOOKING STATEMENTS, WHICH ARE BASED LARGELY ON THE COMPANY'S EXPECTATIONS AND ARE SUBJECT TO VARIOUS BUSINESS RISKS AND UNCERTAINTIES, CERTAIN OF WHICH ARE BEYOND THE COMPANY'S CONTROL. WORDS SUCH AS "EXPECTS," "ANTICIPATES," "TARGETS," "GOALS," "PROJECTS," "INTENDS," "PLANS," "BELIEVES," "SEEKS," "ESTIMATES," VARIATIONS OF SUCH WORDS, AND SIMILAR EXPRESSIONS ARE INTENDED TO IDENTIFY SUCH FORWARD-LOOKING STATEMENTS. THESE FORWARD-LOOKING STATEMENTS ARE ONLY PREDICTIONS THAT SPEAK AS OF THE DATE HEREOF AND ARE SUBJECT TO RISKS, UNCERTAINTIES AND ASSUMPTIONS THAT ARE DIFFICULT TO PREDICT. THEREFORE, ACTUAL RESULTS MAY DIFFER MATERIALLY AND ADVERSELY FROM THOSE EXPRESSED IN ANY FORWARD-LOOKING STATEMENTS. FACTORS THAT MIGHT CAUSE OR

CONTRIBUTE TO SUCH DIFFERENCES INCLUDE, BUT ARE NOT LIMITED TO, (1) EXPECTATIONS
AS TO THE TIMING OF THE FILING OF THE REPORT ON FORM 10-K FOR THE FISCAL YEAR
ENDED DECEMBER 31, 2005 AND THE QUARTERLY REPORT ON FORM 10-Q FOR THE QUARTERLY
PERIOD ENDED MARCH 31, 2006, (2) ANY LISTING REQUIREMENTS WHICH MAY BE
PRESCRIBED OR ANY DETERMINATION WHICH MAY BE MADE BY THE AMERICAN STOCK
EXCHANGE, (3) UNCERTAINTY OF FUTURE FINANCIAL RESULTS, (4) ADDITIONAL FINANCING
REQUIREMENTS, (5) DEVELOPMENT OF NEW PRODUCTS, (6) GOVERNMENT APPROVAL
PROCESSES, INCLUDING APPROVAL OF THE SETTLEMENT BY THE COURT, (7) THE IMPACT OF
COMPETITIVE PRODUCTS OR PRICING, (8) TECHNOLOGICAL CHANGES, (9) THE EFFECT OF
POLITICAL AND ECONOMIC CONDITIONS, (10) THE OUTCOME AND IMPACT OF LITIGATION TO
WHICH THE COMPANY IS A PARTY AND THE SECURITIES AND EXCHANGE COMMISSION AND
OTHER INVESTIGATIONS REGARDING THE COMPANY, AND (11) OTHER UNCERTAINTIES
DETAILED IN THE COMPANY'S FILINGS WITH THE SECURITIES AND EXCHANGE COMMISSION.
YOU ARE CAUTIONED NOT TO PLACE UNDUE RELIANCE ON THESE FORWARD-LOOKING
STATEMENTS THAT SPEAK ONLY AS OF THE DATE HEREOF. THE COMPANY UNDERTAKES NO
OBLIGATION TO REVISE OR UPDATE PUBLICLY ANY FORWARD-LOOKING STATEMENTS TO
REFLECT ANY CHANGE IN THE EXPECTATIONS OF OUR MANAGEMENT WITH REGARD THERETO OR
ANY CHANGE IN EVENTS, CONDITIONS, OR CIRCUMSTANCES ON WHICH ANY SUCH STATEMENTS
ARE BASED.

                                - #### -

```
</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>
-----END PRIVACY-ENHANCED MESSAGE-----
```

```
-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 Q15y8GWVFsZwBFYTkgNOPNdla4jH6/hUFywFvW/Y8bmvxZj341AmGwpxR4FWC8t3
 2DCHDm8+fhPoYHcbiXS4xA==
```

```
<SEC-DOCUMENT>0001092306-05-000195.txt : 20050419
<SEC-HEADER>0001092306-05-000195.hdr.sgml : 20050419
<ACCEPTANCE-DATETIME>20050418174916
ACCESSION NUMBER:                  0001092306-05-000195
CONFORMED SUBMISSION TYPE:         8-K
PUBLIC DOCUMENT COUNT:             2
CONFORMED PERIOD OF REPORT:        20050413
ITEM INFORMATION:                  Amendments to Articles of Incorporation or Bylaws; Change
ITEM INFORMATION:                  Financial Statements and Exhibits
FILED AS OF DATE:                  20050419
DATE AS OF CHANGE:                 20050418

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:            DHB INDUSTRIES INC
                CENTRAL INDEX KEY:                 0000899166
                STANDARD INDUSTRIAL CLASSIFICATION: ORTHOPEDIC, PROSTHETIC & SURGICAL
                IRS NUMBER:                        113129361
                STATE OF INCORPORATION:            DE
                FISCAL YEAR END:                   1231

        FILING VALUES:
                FORM TYPE:             8-K
                SEC ACT:               1934 Act
                SEC FILE NUMBER:       001-13112
                FILM NUMBER:           05757718

        BUSINESS ADDRESS:
                STREET 1:              555 WESTBURY AVE
                CITY:                  CARLE PLACE
                STATE:                 NY
                ZIP:                   11514
                BUSINESS PHONE:        5169971155

        MAIL ADDRESS:
                STREET 1:              555 WESTBURY AVE
                CITY:                  CARLE PLACE
                STATE:                 NY
                ZIP:                   11514

        FORMER COMPANY:
                FORMER CONFORMED NAME: DHB CAPITAL GROUP INC /DE/
                DATE OF NAME CHANGE:   19960518
</SEC-HEADER>
<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<FILENAME>dhb8k.txt
<DESCRIPTION>FORM 8-K DATED 04-13-05
```

<TEXT>

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549


FORM 8-K

CURRENT REPORT PURSUANT TO SECTION 13 OR 15(D) OF
THE SECURITIES EXCHANGE ACT OF 1934

Date of Report (Date of earliest event reported): April 13, 2005


DHB INDUSTRIES, INC.

(Exact name of registrant as specified in its charter)


| Delaware | 0-22429 | 11-3129361 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |


| 400 Post Avenue, Suite 303, Westbury, New York | 11590 |
|---|---|
| (Address of principal executive office) | (Zip Code) |


(516) 997-1155

(Registrant's telephone number, including area code)


N/A

(Former name or former address, if changed since last report.)


Check the appropriate box below if the Form 8-K filing is intended to
simultaneously satisfy the filing obligation of the registrant under any of the
following provisions (see General Instruction A.2. below):

[ ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR
    230.425)
[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act
    (17 CFR 240.14a-12)
[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange
    Act (17 CFR 240.14d-2(b))
[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange
    Act (17 CFR 240.13e-4(c))

<PAGE>

ITEM 5.03.  AMENDMENTS TO ARTICLES OF INCORPORATION OR BYLAWS;  CHANGE IN FISCAL
YEAR

In accordance with Article VII of the bylaws of the Company (the
"By-Laws"), the Board of Directors of the Company, at a duly noticed meeting,
has amended Section 1.4 of the By-Laws (the "Amendment") to decrease the quorum
requirement for all meetings of stockholders from a majority of the outstanding
shares of each class of stock entitled to vote at such meeting to one-third of
the outstanding shares of each class of stock entitled to vote at such meetings.
The Amendment is effective as of April 13, 2005.

Prior to the Amendment, Section 1.4 of the by-Laws provided as
follows:

Section 1.4    QUORUM

Except as otherwise provided by law or in the Certificate of
Incorporation or these By-Laws, at any meeting of stockholders, the holders of a
majority of the outstanding shares of each class of stock entitled to vote at
the meeting shall be present or represented by proxy in order to constitute a
quorum for the transaction of any business. In the absence of a quorum, a
majority in interest of the stockholders present or the chairman of the meeting
may adjourn the meeting from time to time in the manner provided in Section 1.5
of these By-Laws until a quorum shall attend.

Following the Amendment, Section 1.4 of the By-Laws provides as
follows:

Section 1.4    QUORUM

Except as otherwise provided by law or in the Certificate of
Incorporation or these By-Laws, at any meeting of stockholders, the holders of a
majority of the outstanding shares of each class of stock entitled to vote at
the meeting shall be present or represented by proxy in order to constitute a
quorum for the transaction of any business. In the absence of a quorum, a
majority in interest of the stockholders present or the chairman of the meeting
may adjourn the meeting from time to time in the manner provided in Section 1.5
of these By-Laws until a quorum shall attend.

ITEM 9.01.  FINANCIAL STATEMENTS, PRO FORMA FINANCIAL INFORMATION AND EXHIBITS.

(a) Not Applicable

(b) Not Applicable

(c) The following Exhibits are filed as part of this Current Report on
Form 8-K:

99.1    Amended and Restated By-Laws of the Company dated
April 13, 2005.

<PAGE>

SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

DHB INDUSTRIES, INC.

By: /s/ DAWN M. SCHLEGEL

Dawn M. Schlegel
Chief Financial Officer

Dated:   APRIL 14, 2005

<PAGE>

EXHIBIT INDEX

99.1      Amended and Restated By-Laws of the Company, dated April 13, 2005

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-99
<SEQUENCE>2
<FILENAME>ex99-1.txt
<DESCRIPTION>EXHIBIT 99.1
<TEXT>

EXHIBIT 99.1

DHB INDUSTRIES INC.

A Delaware Corporation

AMENDED AND RESTATED
BY-LAWS
As of April 13, 2005

ARTICLE I
STOCKHOLDERS

Section 1.1      ANNUAL MEETING.

An annual meeting of stockholders for the purpose of electing directors and of transacting such other business as may come before it shall be held each year at such date, time, and place, either within or without the State of Delaware, as may be specified by the Board of Directors

Section 1.2      SPECIAL MEETINGS

Special meetings of stockholders for any purpose or purposes may be held at any time upon call of the chairman of the Board, if any, the President, or a majority of the Board of Directors, at such time and place either within or without the State of Delaware as may be stated in the notice. A special meeting of stockholders shall be called by the President upon the written request, stating time, place, and the purpose or purposes of the meeting of stockholders who together own of record a majority of the outstanding stock of all classes entitled to vote at such meeting.

Section 1.3      NOTICE OF MEETING

Written notice of stockholders meetings, stating the place, date and hour thereof, and, in the case of a special meeting, the purpose or purposes for which the meeting is called, shall be given by the Chairman of the Board, if any, the President, any Vice President, the Secretary, or any Assistant Secretary, to each stockholder entitled to vote thereat at least ten days but not more than sixty days before the date of the meeting, unless a different period is prescribed by law.

Section 1.4      QUORUM

Expect as otherwise provided by law or in the Certificate of Incorporation or these By-Laws, at any meeting of stockholders, the holders of one-third of the outstanding shares of each class of stock entitled to vote at the meeting shall be present or represented by proxy in order to constitute a quorum for the transaction of any business. In the absence of a quorum, a

<PAGE>

majority in interest of the stockholders present or the chairman of the meeting may adjourn the meeting from time to time in the manner provided in Section 1.5 of these By-Laws until a quorum shall attend.

Section 1.5      ADJOURNMENT

Any meeting of stockholders, annual or special, may adjourn from time to time to reconvene at the same or some other place, and notice need not be given of any such adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than thirty days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

Section 1.6      ORGANIZATION

The Chairman of the Board, if any, or the Chairman's absence, the President, or in their absence any Vice President, shall call to order meetings of stockholders and shall act as chairman of such meetings. The Board of

Directors or, if the Board fails to act, the stockholders may appoint any stockholder, director, or officer of the Corporation to act as chairman of any meeting in the absence of the Chairman of the Board, the President, and all Vice Presidents.

The Secretary of the Corporation shall act as secretary of all meetings of stockholders, but, in the absence of the Secretary, the chairman of the meeting may appoint any other person to act as secretary of the meeting.

Section 1.7      VOTING

Except as otherwise provided by law in the Certificate of Incorporation or these By-Laws and except for the election of directors, at any meeting duly called and held at which a quorum is present, a majority of the votes cast at such meeting upon given question by the holders of outstanding shares of stock of all classes of stock of the Corporation entitled to vote thereon who are present in person or by proxy shall decide such questions. At any meeting duly called and held for the election of directors at which a quorum is present, directors shall be elected by plurality of the votes cast by holders (acting as such) of shares of stock of the Corporation entitled to elect such directors.

<PAGE>

## ARTICLE II

### BOARD OF DIRECTORS

Section 2.1      NUMBER AND TERM OF OFFICE

The business, property, and affairs of the Corporation shall be managed by or under the direction of the Board of three directors; provided, however, that the Board, by resolution adopted by vote of a majority of the then authorized number of directors, may increase or decrease the number of directors. The directors shall be elected by the holders of shares entitled to vote thereon at the annual meeting of stockholders, and each shall serve (subject to the provisions of Article IV) until the next succeeding annual meeting of stockholders and until a respective successor has been elected and qualified.

Section 2.2      CHAIRMAN OF THE BOARD

The directors may elect one of their members to be Chairman of the Board of Directors. The Chairman shall be subject to the control of and may be removed by the Board of Directors. The Chairman of the Board shall perform such duties as may from time to time be assigned by the Board.

Section 2.3      MEETINGS

The annual meeting of the Board of Directors, for the election of the officers and the transaction of such other business as may come before the meeting, shall be held without notice at the same place as, and immediately following, the annual meeting of the stockholders

Regular meetings of the Board of Directors may be held without notice

at such time and place as shall from time to time be determined by the Board.

Special meetings of the Board of Directors shall be held at such time and place as shall be designed in the notice of the meeting whenever called by the Chairman of the Board, if any, the President, or by a majority of the directors of the office.

## Section 2.4    NOTICE OF SPECIAL MEETINGS

The Secretary, or in the Secretary's absence, any other officer of the Corporation, shall give each director notice of the time and place of the holding of special meetings of the Board of Directors by mail at least five days before the meeting, or by telegram, cable, radiogram, or personal service at least two days before the meeting. Unless otherwise stated in the notice thereof, any and all business may be transacted at any meeting without specification of such business in the notice.

<PAGE>

## Section 2.5    QUORUM AND ORGANIZATION OF MEETINGS

A majority of the total number of member of the Board of Directors as constituted from time to time shall constitute a quorum for the transaction of business, but if at any meeting of the Board of Directors (whether or not adjourned from a previous meeting) there shall be less than a quorum present, a majority of those present may adjourn the meeting to another time and place, and the meeting may be held as adjourned without further notice or waiver. Except as otherwise provided by law or in the Certificate of Incorporation or these By-Laws, a majority of the directors present at any meeting at which a quorum is present may decide any question brought before such meeting. Meetings shall be presided over by the Chairman of the Board, if any, or in the Chairman's absence, by the President, or in the absence of both by such other person as the directors may elect. The Secretary of the Corporation shall act as secretary of the meeting, but in the Secretary's absence, the chairman of the meeting may appoint any person to act as secretary of the meeting.

## Section 2.6    COMMITTEES

The Board of Directors may, by resolution passed by a majority of the whole Board, designate one or more committees, each committee to consist of one or more of the directors of the Corporation. The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not the member or they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in place of any such absent or disqualified member. Any such committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business, property, and affairs of the Corporation, and authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have power or authority in reference to amending the Certificate of Incorporation of the Corporation (except that a committee may, to the extent authorized in the resolution providing for the issuance of shares of stock adopted by the Board of Directors pursuant to authority expressly granted to the

Board of Directors by the Corporation's Certificate of Incorporation, fix any of the preferences or rights of such shares relating to dividends, redemption, dissolution, any distribution of assets of the Corporation, or the conversion into, or the exchange of such shares of any other class or classes or any other series of the same or any other classes of stock of the Corporation), adopting an agreement of merger or consolidation under Section 251 or 252 of the General Corporation Law of the State of Delaware, recommending to the stockholders the sale, lease, or exchange of all or substantially all of the Corporation's property and assets, recommending to the stockholders a dissolution of the Corporation or a revocation of dissolution, or amending these By-Laws; and, unless the resolution so provided, no such committee shall have the power or authority to declare a dividend, to authorize the issuance of stock, or to adopt a certificate of ownership and merger pursuant to Section 253 of the General Corporation Law of the State of Delaware. Each committee which may be established by the Board of Directors pursuant to these By-Laws may fix its own rules and procedures. Notice of meetings of committees, other than of regular meetings provided for by the rules, shall be given to committee members. All action taken by committees shall be recorded in minutes of the meetings.

<PAGE>

Section 2.7      ACTION WITHOUT MEETING

        Nothing contained in these By-Laws shall be deemed to restrict the power of members of the Board of Directors or any committee designated by the Board to take any action required or permitted to be taken by them without a meeting.

Section 2.8      TELEPHONE MEETINGS

        Nothing contained in these By-Laws shall be deemed to restrict the power of members of the Board of Directors, or any committee designated by the Board, to participate in a meeting of the Board, or committee, by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other.

ARTICLE III

OFFICERS

Section 3.1      EXECUTIVE OFFICERS

        The executive officers of the Corporation shall be the Chairman of the Board, a President, a Secretary and a Treasurer. Any person may hold two or more of such officers, except that the same person shall not be both President and Secretary unless all of the issued and outstanding shares of the Corporation are owned by one person, in which case such person may hold all or any combination of offices. The executive officers of the Corporation shall be elected annually (and from time to time by the Board of Directors, as vacancies occur), at the annual meeting of the Board of Directors following the meeting of shareholders at which the Board of Directors was elected.

Section 3.2      OTHER OFFICERS

The Board of Directors may appoint such other officers and agents, including one or more Vice Presidents, and may elect or appoint, or may delegate to the Chairman of the Board the power to appoint such other officers and agents, as it may at any time or from time to time deem advisable, including a Chief Financial Officer, Assistant Vice Presidents and Assistant Treasurers, and any other officers so elected or appointed shall have such authority and perform such duties as the Board of Directors, or the Chairman of the Board if the Chairman of the Board shall have appointed them, may from time to time prescribe.

<PAGE>

Section 3.3     AUTHORITIES AND DUTIES

All officers, as between themselves and the Corporation, shall have such authority and perform such duties in the management of the business and affairs of the Corporation as any be provided in these By-Laws, or, to the extent not so provided, as may be prescribed by the Board of Directors

Section 3.4     TENURE AND REMOVAL

The officers of the Corporation shall be elected or appointed to hold office until their respective successors are elected or appointed. All officers shall hold office at the pleasure of the Board of Directors, and any officer elected or appointed by the Board of Directors may be remove at any time by the Board of Directors for cause or without cause at any regular meeting.

Section 3.5     VACANCIES

Any vacancy occurring in any office of the Corporation, whether because of death, resignation or removal, with or without cause, or any other reason, shall be filled by the Board of Directors.

Section 3.6     COMPENSATION

The salaries and other compensation of all officers and agents of the Corporation shall be fixed by or in the manner prescribed by the Board of Directors.

Section 3.7     CHAIRMAN OF THE BOARD

The Chairman of the Board shall be the Chief Executive Officer of the Corporation. The Chairman of the Board shall preside at all meetings of the shareholders and the directors. The Chairman of the Board shall have general and active management of the business of the Corporation, shall see to it that all resolutions and orders of the Board of Directors are carried into effect, and, in connection therewith, shall be authorized to delegate to the President and the other executive officers such powers and duties of the Chairman of the Board as the Chairman of the Board may deem to be advisable.

<PAGE>

Section 3.8      PRESIDENT

The President shall be the chief administrative officer and chief financial officer of the Corporation. The President shall assist the Chairman of the Board in the management of the business of the Corporation and, in the absence of the Chairman, shall preside at all meetings of the shareholders and the directors and exercise the other powers and perform the other duties of the Chairman or designate the executive officers of the Corporation by whom such other powers shall be exercised and other duties performed; and shall have such other powers and duties as the Board of Directors or Chairman of the Board may from time to time prescribe. Except where by law or by order of the Board of Directors the signature of the Chairman of the Board is required, the President shall have the power as the Chairman of the Board to execute instruments on behalf of the Corporation.

Section 3.9      VICE PRESIDENT

The Vice President, if any, or, if there shall be more than one, each Vice President, shall have such powers and shall perform such duties as may from time to time be assigned by the Board of Directors

Section 3.10     SECRETARY

The Secretary shall attend all meetings of the shareholders and all meetings of the Board of Directors and shall record all proceedings taken at such meetings in a book to be kept for that purpose; the Secretary shall see that all notices of meetings of shareholders and special meetings of the Board of Directors are duly given in accordance with the provisions of these By-Laws or as required by law; the Secretary shall be the custodian of the records and of the corporate seal or seals of the Corporation; the Secretary, or the Assistant Secretary, shall have authority to affix the corporate seal or seals to all documents, the execution of which, on behalf of the Corporation, under its seal, is duly authorized, and when so affixed it may be attested by the Secretary's signature or the signature of such Assistant Secretary; and in general, the Secretary shall perform all duties incident to the office of the Secretary of a corporation, and such other duties as the Board of Directors may from time to time prescribe. The Board of Directors may give general authority to any other officer to affix the Seal of Corporation and to attest the affixing by signature.

Section 3.11     TREASURER

The Treasurer shall have charge of and be responsible for all funds, securities, receipts and disbursements of the Corporation and shall deposit, or cause to be deposited, in the name and to the credit of the Corporation, all moneys and valuable effects in such banks, trust companies, or other depositories as shall from time to time be selected by the Board of Directors. The Treasurer shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation; shall render to the Chairman of the Board and to each member of the Board of Directors, whenever requested, an account of all transactions as Treasurer and of the financial condition of the Corporation; in general; shall perform all of the duties incident to the office of the Treasurer of the Corporation, and such other duties as the Board of Directors may from time to time prescribe.

<PAGE>

## ARTICLE IV

### RESIGNATION, REMOVAL AND VACANCIES

Section 4.1     RESIGNATIONS

Any director or officer of the Corporation, or any member of any committee, may resign at any time by giving written notice to the Board of Directors, the President, or the Secretary of the Corporation. Any such resignation shall take effect at the time specified therein, or if the time be not specified therein, then upon receipt thereof. The acceptance of such resignation shall not be necessary to make it effective.

Section 4.2     REMOVALS

The Board of Directors, by vote of not less than a majority of the entire Board, at any meeting thereof, or by written consent, at any time, may, to extent permitted by law, remove with or without cause from office or terminate the employment of any officer or member of any committee and may, with or without cause, disband any committee.

Any director on the entire Board of Directors may be removed, with or without cause, by the holders of a majority of the shares entitled at the time to vote at an election of directors.

Any director elected by the holders of any class or series of shares entitled at the time to vote as a class at an election of directors may be removed without cause by the holders of a majority of such class or series of shares, voting as a class and may be removed with cause by holders of a majority of the shares to vote at an election of directors.

Section 4.3     VACANCIES

Any vacancy in the office of any director or officer through death, resignation, removal, disqualification, or other cause, and any additional directorship resulting form increase in the number of directors, may be filled at any time by a majority of the directors then in office (even though less than a quorum remains) or, in the case of any vacancy in the office of any director, by the stockholders, and, subject to the provisions of the Article IV, the person so chosen shall hold office until a successor shall have been elected and qualified; or, if the person so chose is a director elected to fill a vacancy, such person shall (subject to the provisions of this Article IV) hold office for the unexpired term of the predecessor.

<PAGE>

## ARTICLE V

### CAPITAL STOCK

Section 5.1        STOCK CERTIFICATES

        The certificate for shares of the capital stock of the Corporation
shall be in such form as shall be prescribed by law and approved, from time to
time, by the Board of Directors.

Section 5.2        TRANSFER OF SHARES

        Shares of the capital stock of the Corporation may be transferred in
the books of the Corporation only by the holder of such shares or by the
holder's duly authorized attorney, upon the surrender to the Corporation or its
transfer agent of the certificate representing such stock properly endorsed.

Section 5.3        FIXING RECORD DATE

        In order that the Corporation may determine the stockholders entitled
to notice of or to vote any meeting of stockholders or any adjournment thereof
(or to express consent to corporate action in writing without a meeting), or
entitled to receive payment of any dividend or other distribution or allotment
of any rights, or entitled to exercise any rights in respect of any change,
conversion, or exchange of stock, or for the purpose of any other lawful action,
the Board of Directors may fix, in advance, a record date, which, unless
otherwise provided by law, shall not be more that sixty days nor less that ten
days before the date of such meeting, nor more than sixty days prior to any
other action.

Section 5.4        LOST CERTIFICATES

        The Board of Directors or any transfer agent of the Corporation may
direct a new certificate or certificates representing stock of the Corporation
to be issued in place of any certificate or certificates therefore issued by the
Corporation, alleged to have been lost, stolen or destroyed, upon making of an
affidavit of that fact by the person claiming the certificate to be lost, stolen
or destroyed. When authorizing such issue of a new certificate or certificates,
the Board of Directors (or any transfer agent of the Corporation authorized to
do so by a resolution of the Board of Directors) may, in its discretion and as a
condition precedent to the issuance thereof, require the owner of such lost,
stolen, or destroyed certificate or certificates, or the owner's legal
representative, to give the Corporation a bond in such sum as the Board of
Directors (or any transfer agent authorized) shall direct to indemnify the
Corporation against any claim that may be made against the Corporation with
respect to the certificate alleged to have been lost, stolen, or destroyed or
the issuance of such new certificates, and such requirement may be general or
confined to specific instances.

<PAGE>

Section 5.5        REGULATION

        The Board of Directors shall have power and authority to make all such
rules and regulations as it may deem expedient concerning the issue, transfer,
resignation, cancellation, and replacement of certificates representing stock of
the Corporation.

## ARTICLE VI

### MISCELLANEOUS

Section 6.1        CORPORATE SEAL

The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization, and the words "Corporate Seal" and "Delaware" and shall be in such form as may be approved from time to time by the Board of Directors.


Section 6.2        FISCAL YEAR

The fiscal year of the Corporation shall begin on the 1st day of January in each year and terminate on the 31st day of December in each succeeding year.


Section 6.3        NOTICES AND WAIVERS THEREOF

Whenever any notice whatever is required by law, the Certificate of Incorporation, or these By-Laws to be given to any stockholder, director, or officer, such notice, except as otherwise provided by law, may be given personally, or by mail, or, in the case of directors or officers, by telegram, cable, or radiogram, addressed to such address as appears on the books of the Corporation. Any notice given by telegram, cable, or radiogram shall be deemed to have been given when it shall have been delivered for transmission and any notice given by mail shall be deemed to have been given when it shall have been deposited in the United States mail with postage thereon prepaid.

<PAGE>


Whenever any notice is required to be given by law, the Certificate of Incorporation, or these By-Laws, a written waiver thereof, signed by the person entitled to such notice, whether before or after the meeting or the time stated therein, shall be deemed equivalent in all respects to such notice to the full extent permitted by law.


Section 6.4        STOCK OF OTHER CORPORATIONS OR OTHER INTERESTS

Unless otherwise ordered by the Board of Directors, the President, the Secretary, and such attorneys or agents of the Corporation as may be from time to time authorized by the Board of Directors or the President, shall have full power and authority on behalf of this Corporation to attend and to act and vote in person or by proxy at any meeting of the holders of securities of any corporation or other entity in which this Corporation may own or hold shares or other securities, and at such meetings shall possess and may exercise all the rights and powers incident to the ownership of such shares or other securities which this Corporation, as the owner or holder thereof, might have possessed and exercised if present. The Chairman, President, Secretary, or such attorneys or agents, may also execute and deliver on behalf of this Corporation powers of attorney, proxies, consents, waivers, and other instruments relating to the shares or securities owned or held by this Corporation.

## ARTICLE VII

### AMENDMENTS

The holders of the shares entitled at the time to vote for the election of directors shall have power to adopt, amend, or repeal the By-Laws of the Corporation by vote of not less than a majority of such shares, and except as otherwise provided by law, the Board of Directors shall have power equal in all respects to that of the stockholders to adopt, amend, or repeal the By-Laws by vote of not less than a majority of the entire Board. However, any By-Laws adopted by the Board may be amended or repealed by vote of the holders of a majority of the shares entitled at the time to vote for the election of directors.

```
</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>
-----END PRIVACY-ENHANCED MESSAGE-----
```

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2006, a copy of the foregoing will be

served by hand delivery on the following:

> DHB, Industries, Inc.
> c/o YCS&T Services LLC
> 1000 West Street
> Brandywine Building, 17th Floor
> Wilmington, DE 19801

_Anne C. Foster_

Anne C. Foster (#2513)